J. P. SANDERSON & CO., APPELLANTS, vs. LEROY J. HAGAN
AND EPHRAIM L. HARRISON, APPELLEES.

The Court will very reluctantly interfere with the verdict of the jury as to
the facts, yet where it is unsupported by the testimony in the case, or con-
trary to it, its duty is imperative to set it aside and direct another trial.

This was the case of a purchase of saw logs, and the proof was, that the saw
log mode of measurement was the one prevailing universally in the sale of
this article on the river, and that the other, the cubic rule, did not prevail,
but had been abandoned when adopted in some few instances, so that it
was incumbent on the jury not to have adopted the latter, but the former
rule, and having adopted the former, greatly increasing the quantity and
adding to the price and injury of the defendants, the verdict of the jury
was improper and should be set aside.

Appeal from the Circuit Court of the Eastern Circuit
for Duval county.

This was an action of assumpsit instituted by the ap-
pellees as plaintiffs in the Court below, against the appel-
lants, to recover the price and value of a raft containing
eleven hundred and two round saw logs, estimated at three
hundred and two thousand two hundred and thirty-two
feet, alleged to have been bargained and sold by plaintiffs
to defendants.   The declaration contained only the com-
mon counts, there being no count upon a special contract
designating the quantity and quality of the timber, and
fixing the price per thousand to be paid by defendants.

The defendants pleaded the general issue and a set-off.

On the trial of the case plaintiffs introduced John G.
Smith as a witness, who testified that he is a sworn inspec-
tor of lumber ; that he had been called upon at various
times to survey rafts for plaintiffs ; that on 19th October,

1853, he surveyed for plaintiffs eight hundred and fifty-six round logs, measuring two hundred and thirty-one thousand six hundred and fifty-four superficial feet, and on the 21st day of October, 1853, he surveyed for them two hundred and eighty-seven round logs measuring seventy-nine thousand and sixty-four superficial feet; that he made deductions for defects to make up amount. Has had a conversation with J. P. Sanderson, and came to the con-clusion that defendants had received the logs, but there was some contest as to the survey or amount; thinks defen-dants admitted they received the lumber but objected to the survey. These logs were not surveyed by the rule wit-ness had been previously surveying by. Witness surveyed several rafts by the same rule he surveyed these by, and that the surveys were rejected so far as he could learn. Witness changed the rule of surveying the rafts sold de-fendants in consequence of a conversation with Mr. Hagan, one of the plaintiffs—his first rule is what is called the saw log rule; the rule he adopted in these surveys gave the cubical contents of the round stick—this rule gives a great-er quantity than the saw-log rule. Witness has since adopted the saw log rule, which was the one he used prior to the change made in surveying these rafts at the instance of plaintiffs.

James M. Daniel, another witness introduced by plain-tiffs, testified that the logs were delivered under a contract by which the plaintiffs were to deliver at the mill, round logs, at six dollars and thirty-seven and a half cents, free of all expenses to defendants. The logs in controversy are the logs said to have been surveyed by Mr. Smith. Wit-ness managed the mill for defendants in the year 1853. Sanderson asked Harrison, one of the plaintiffs, whether the raft he, Harrison, wanted to sell was as good as one he, Sanderson, then pointed out, which contained many good logs. Harrison replied that they were better, and Sander-

320 SUPREME COURT,

Sanderson & Co. vs. Hagan & Harrison.—Statement of Case.

son then agreed to give him his price, expecting to get many fine logs. The raft, in pursuance of that contract, was brought down to the mill and delivered; was at the mill when the raft was delivered—it was very much inferior, and called the attention of Harrison to the fact—informed him after sawing the raft a little; told him the mill could not take the logs under that measurement. Defendants had previously purchased a raft from plaintiffs, which averaged two hundred and sixty-five feet to the log, and Harrison agreed that these logs should be equal to that raft; found they did not come up to contract, and same day notified both Harrison and Sanderson. Mr. Sanderson then refused to receive the logs under the contract, and claimed that plaintiffs should fulfil their contract. The saw log rule was the only one in use on the river, and the only one by which logs were purchased for the mill. This raft when it reached the mill was thirty-one logs short of the number called for by Smith's survey. The difference between the two surveys of Smith and Barrs was fifty-nine thousand seven hundred and seventy-eight feet, including the thirty-one lost logs. There was no rule of measurement spoken of at the time of the contract. The balance of the raft was sawed at the mill after it was measured by Barr. In the saw log rule a reduction is made for the saw cut—in the other it is not. In a raft of small logs the difference is greater.

The defendants objected to the testimony of this witness in relation to a contract, because there was no special count in the declaration, but the Court overruled the objection and defendants excepted.

Benjamin Falana, sworn for plaintiffs, said he was at work at the mill; saw the raft; was sent to it by Mr. Daniel to pick out logs; cut the raft in several places; a part of the raft got broken; does not know whether it got broken before or after Barrs surveyed it.

George Houston sworn for plaintiffs—Was at the mill when the raft arrived there and they went on to count it. No dissatisfaction was then expressed ; never heard any objection to Smith's survey ; logs were then high and demand active ; can't say what the price was—should not think six dollars.

Mr. Barrs, sworn for defendants, testified that he surveyed raft at Sanderson's mill in November, 1853, by Mr. Sanderson's direction, and at his request witness notified Harrison, one of the plaintiffs, and requested him to be present at the survey which he declined to do. About fifteen logs had drifted out of tail end of raft and were on the shore—he measured them ; thinks there were some thirty or forty logs out of the raft. By his survey there were one thousand and eighty-four logs—three rotten—making 236,308 feet. This survey was by saw log rule ; this was the rule by which logs were bought and sold on the river unless a different one is used by special agreement. In this raft there would be 50,000 or 60,000 less measured by the saw log rule than if measured by the cubic rule. Is not a sworn surveyor, but is accustomed to surveying and is familiar with it.

Several other witnesses examined by defendants testified that the saw log rule was the one used in the purchase of logs on the river St. Johns.

The defendants' set-off, amounting to $1961.86, was admitted.

The Court charged the Jury as follows :

" If you find from the evidence that there was a special contract between the parties, which has been fully complied with and performed on the part of the plaintiffs, then they are entitled, under the declaration in this cause, to recover, according to the provisions and stipulations thereof; but if you find from the evidence a special contract which has not been fully performed by the plaintiffs, then they are

not entitled to recover under the declaration in this cause, unless the contract was rescinded, abandoned or extinct by some act of the defendants."

" If you find from the evidence that these logs were purchased under a special contract, or that there was a special agreement that plaintiffs were to deliver to defendants, at their mill, logs of a particular size, description and quality, for a certain stipulated price, then plaintiffs cannot recover, there being no special count in the declaration—unless you find the contract has been fully performed by the plaintiffs, or rescinded, abandoned or extinct by some act of the defendants."

" If you find from the evidence, that at the time of the delivery of these logs, Preston's board-measure rule—that is, the saw log rule—was the rule by which the contents of round logs was ascertained and determined between vendors and purchasers, then you are to presume that these logs were purchased by this rule, for if they were not to have been measured by this rule, it is incumbent upon the plaintiffs to show that defendants agreed to receive them by some other rule of measurement."

The jury returning a verdict in favor of plaintiffs, the defendants by their attorney moved the Court for arrest of judgment and a new trial on the following grounds, viz:

1. Because the verdict was contrary to the charge of the Court and against the evidence.

2. Because it was contrary to the weight of evidence.

3. Because improper evidence was admitted under the issues and defendants were taken by surprise.

4. Because the damages were excessive.

5. Because the verdict was contrary to law.

6. Because the charge of the Court was contrary to law.

The motion was overruled and judgment was entered for plaintiffs, from which defendants appealed.

Sanderson & Co. vs. Hagan & Harrison.—Opinion of Court.

*Sanderson* for Appellants.

*Wheaton* for Appellees.

PEARSON, J., delivered the opinion of the Court.

This was an action of *indebitatus assumpsit*, brought by the plaintiffs against the defendants, for the recovery of the price and value of a raft containing eleven hundred and two round saw logs, estimated at 302,232 feet, bargained and sold, as alleged by plaintiffs, to defendants. The declaration contained only the common counts, there being no count upon a special contract designating the quality of the timber and fixing the price per thousand to be paid for the same.

The pleas were the general issue and a set-off.

There was a verdict and judgment for the plaintiffs below, to. which the defendants excepted and moved for a new trial. This motion was refused and the defendants bring their appeal before this Court.

Although several errors have been assigned, we see but three points demanding our attention, to-wit:

1. Whether a recovery can be had upon the common counts, when a special contract has been proved and not executed or rescinded.

2. Whether improper testimony was admitted upon the trial; and lastly,

3. Whether the verdict of the jury was sustained by the testimony.

The case was elaborately and ably argued, and the law on the subject brought fully before the Court.

The principle of law involved in the first proposition is of familiar occurrence—is found in all the elementary books, and admits of no question. The only difficulty here consists in its application to the case under review. The ques-

tion was made in the Court below at the trial, and the presing Judge charged the jury on the subject as follows :

" If you find from the evidence that these logs were purchased under a special contract, or that there was a special agreement that plaintiffs were to deliver to the defendants, at their mill, logs of a particular size, description and quality, for a certain stipulated price, then plaintiffs cannot recover, there being no special count in the declaration—unless you find the contract has been fully performed by the plaintiffs, or rescinded, abandoned or extinct by some act of the defendants."

The legal proposition contained in this charge was not disputed in the argument, nor do we perceive any reason to question its soundness. The law, therefore, having been correctly laid down to the jury, it remains only to inquire whether, from the testimony, they were permitted to ignore the existence of such special contract. And here it will be seen it is not a question of conflicting testimony, or of the weight of testimony to support the verdict, but rather of the sufficiency of the unrebutted evidence to establish a contrary conclusion. Viewed in this aspect, it presented to the Court below, upon the motion for a new trial, the question of the weight and conclusiveness of testimony in its most delicate form. The Court was moved to adjudge that the jury should have believed that which they upon their oaths declared they did not believe. The exercise of such power would certainly prove a very high and dangerous prerogative in the Court, and we think the Circuit Judge very wisely declined it. Nevertheless, we are free to admit that the testimony in this case, of Mr. J. M. Daniel, goes far, in our mind, to establish the special contract contended for, though its execution or recision is more doubtful, but the finding of the jury is a legal resolution of all doubt in the matter, and must, for all present purposes, be conclusive on the subject.

2. The exception was originally taken at the trial, that inasmuch as the declaration contained no special count upon a special contract, no evidence to establish such contract was admissible. This objection was overruled, and J. M. Daniel, one of the witnesses called by the plaintiffs, was permitted to testify that "these logs were delivered under a contract," which he states substantially to have been that they were to be of a quality fully equal to a former raft, which had been purchased from the same parties, and sawed by him at the same mill, and delivered at the mill free of all expenses to the defendants, at six dollars and thirty-seven and a half cents per thousand. The issue was upon the *quantum valebant*, and such testimony going to establish a special contract for timber of a certain quality, to be delivered at the cost of the plaintiffs at defendants' mill, at a stipulated price, was clearly inadmissible. The principle that the evidence must be confined to the issue is universal and conclusive on the question. We cannot know what effect this testimony may have had upon the minds of the jury, nor what injury the defendants may have sustained by its admission ; but it is manifestly inadmissible by the rules of law, and the defendants are therefore entitled to the benefit of their exception in this respect.

3. It appears from the testimony that there were two methods of measuring round logs, both of which are laid down in Preston's Tables. By one of these methods, the solid cubic contents of the log is obtained, while by the other, the quantity which they will make when manufactured at a saw mill into boards is ascertained. Mr. John Smith, a sworn inspector and surveyor of lumber, was called by the plaintiffs to survey the raft of logs in question, and he testifies substantially the distinction between the former, called the "cubic rule," and the latter called the "saw log rule," the former giving a larger quantity than the latter. Mr. J. M. Daniel, another of the plain-

tiffs' witnesses, makes the same explanation, and says the "cubic rule" gives about one-fifth more lumber in the stick than the "saw log rule," the difference consisting in an estimate and deduction, under the latter rule, of the quantity consumed by the saw kerf or cut in the process of manufacture into boards.

On this subject the Court charged the jury as follows, to-wit: "If you find from the evidence that at the time of the delivery of these logs, Preston's board measure rule —that is, the ‾saw log rule—was the rule by which the contents of round logs was ascertained and determined between vendors and purchasers, then you are to presume that these logs were purchased by this rule; for if they were not to have been measured by this rule, it is incumbent upon the plaintiffs to show that defendants agreed to receive them by some other rule of measurement."

This instruction has not been complained of by the counsel on either side, nor do we see any objection to it. It should therefore have been a guide to the jury in making up their verdict. What have they done? They have based their verdict upon Smith's survey and measurement, which he testifies was made by the "cubic rule," thereby ignoring the existence of the "board measure" or "saw log rule," and the question is, whether such a finding is supported by the testimony.

However disinclined we are to invade the proper province of a jury in estimating the force and effect of testimony, this is a case of too glaring a departure from all legal principle for the verdict to be permitted to stand. There was no testimony whatever to support the idea that the "cubic rule" was the prevailing and customary mode of measurement adopted in the locality of this transaction between dealers in saw logs. On the contrary, Mr. Smith himself testifies, that he had adopted the "saw log rule" in his surveys previous to this transaction, with a few

exceptions, all of which occasioned difficulties and were rejected, and that subsequent to this survey, he returned to his former practice under the "saw log rule." He further states that he was induced to adopt the "cubic rule" in this particular survey *by one of the plaintiffs*, and so far as it appears, without the knowledge or consent of the defendants. Mr. Barrs, who was called by the defendants, testifies that he was accustomed to surveying logs and familiar with it, though not a sworn surveyor. He surveyed this raft at the defendants' mill, at their request, having first given the plaintiffs notice to attend the survey, which they declined to do. He made the survey according to the "saw log rule," which was "the rule by which logs were bought and sold on the river, unless a different one is used by special agreement." The cubic rule is a different one. In these logs there would be a considerable difference in the quantity, according to which rule they were measured by. There would be fifty or sixty thousand feet less if measured by the saw log rule.

Upon the presumption then that the cubic rule was not the prevailing and customary rule, it is apparent that the jury, in basing their verdict upon Smith's survey made by that rule, charged the defendants with this excess. The testimony of all the other witnesses establish fully that the "saw log rule" was the recognized rule. This verdict then is clearly unsupported by the evidence, and contrary to the charge of the Court, and it must therefore be set aside, the judgment reversed, and a new trial granted.