LOVE ET AL. *v.* MILLER ET AL.

PRINCIPAL AND AGENT.—*Real Estate Broker.*—Where an owner of certain real estate agreed with a broker, that if the latter would "find a purchaser, or make a sale of said real estate," said owner would pay said broker, for his commission, a certain sum; and, in pursuance of said agreement, the broker effected a bargain and sale of said real estate, by a contract which was mutually obligatory on said owner as vendor and a third person as vendee, the broker was entitled to said commission, though the vendee afterwards refused to execute his part of said contract of sale.

From the Marion Superior Court.

*J. T. Dye* and *A. C. Harris*, for appellants.

*C. W. Smith* and *R. O. Hawkins*, for appellees.

BIDDLE, J.—The appellants were real estate brokers in the city of Indianapolis. The appellees were owners of certain real estate, situated in the city, on the corner of Washington and Mississippi streets. The parties mutually agreed that if the appellants would "find a purchaser, or make a sale of said real estate," they should receive for their commission one thousand dollars, which the appellees agreed to pay. In pursuance of this agreement, the appellants procured an offer for the real estate mentioned, from John Wymond, which was accepted by the appellees. The offer and acceptance are in the following words:

."To Messrs. Miller and Crawford,

"GENTS:—I will give you for your property on the cor-

ner of Washington and Mississippi streets, in the city of Indianapolis, Ind. : I will assume forty-five thousand dollars now on the property, after deducting the back interest, and give you my dwelling property, in which I now reside, at Lawrenceburgh, Ind., and pay you five thousand dollars in cash; and I am to have the rents from December 1st, 1873.                    JOHN WYMOND.

" Indianapolis, Dec. 4th, 1873.

" We accept the above proposition.

                    " SCOTT MILLER.

                    " J. MONROE CRAWFORD."

On the 8th of December, 1873, the parties met at the office of the appellants, to carry out the agreement by executing the proper conveyances interchangeably and paying and receiving the purchase-money.    After some talk between and amongst the parties, Wymond became dissatisfied with the agreement as a bargain, and refused to execute his part of it; whereupon, the appellants informed the appellees that they, the appellees, could hold Wymond to his agreement, and that they, the appellants, should hold them, the appellees, for their commission of one thousand dollars.    These are the essential, and, we believe, the undisputed facts of the case.    The appellees refused to pay the commission, and the appellants brought this suit.    We do not state the issues nor the proceedings, as no question is made concerning them.    The finding and judgment below were against the appellants.    The main question there was, and here is, are the appellants entitled to recover their commission against the appellees, upon the facts stated?  And the case, we think, turns upon the sole question whether the offer and acceptance, as set forth, amounts to " finding a purchaser, or making a sale " of the real estate described or not, within the meaning of the agreement made between the appellants and appellees.

The question involved in this case has never before been presented in this State, we believe.    Indeed, we have very few reported cases, in any way touching the subject-matter

of brokers' commissions. The authorities of other states do not seem to entirely agree; but upon close analysis, it does not appear that they are in serious conflict.

To complete a sale of personal property, either actual or potential delivery of the article sold is necessary, unless there is some different special stipulation in the agreement. In ancient times, it was necessary, in the sale of land or a tenement, to complete the right of possession by the delivery of a turf or clod, which ceremony was called *livery of seisin;* but, in the advancement of civilization and intelligence, when written deeds were introduced, this cumbrous and symbolical performance fell into disuse, and has long since been abolished. A bargain and sale, since the enactment of the statute of uses and trusts, "is a kind of a real contract, whereby the bargainer, for some pecuniary consideration, bargains and sells, that is, contracts to convey the land to the bargainee, and becomes by such a bargain trustee for, or seized to the use of, the bargainee; and then the statute of uses completes the purchase; or, as it hath been well expressed, the bargain first vests the use, and then the statute vests the possession." 2 Bl. Com. 338. Indeed, conveyance in trust is frequently nothing more than a contract that the trustee shall convey the land in some special manner, or to some particular person, or as the *cestuy que use* may direct. According to this view, a contract to convey may be held as a sale. No question has been made in this case as to the validity of the contract between the vendors and vendee.

The following cases are cited on behalf of the appellees:

*McGavock* v. *Woodlief*, 20 How. U. S. 221. In that case, the vendor gave his broker specific directions to sell his plantation and slaves for one hundred and thirty thousand dollars, of which twenty thousand dollars was to be paid in cash, and the remainder in five equal, annual instalments, with interest. The broker found a purchaser, George M. Long, who agreed to these terms, but when they proceeded to execute the contract, Long and the broker changed the

terms of it, by substituting Long's wife as the purchaser, and were to negotiate certain notes she held against Dr. Bard, to apply on the one hundred and thirty thousand dollars, and made no special arrangement at all as to the payment of the twenty thousand dollars. To this new agreement, as far as the evidence showed, the vendor never consented. The case, in short, is this: The vendor directs his broker to sell his property according to specific terms; the broker ultimately changes the terms to another contract, to which the vendor never agreed. Upon this ground, it was held, that the broker could not recover for his commission, and we think very properly. But it is quite a different case from the one before us. True, Mr. Justice NELSON, in delivering the opinion of the court, says: "Certainty in the offer to fulfil is as important to the vendor as in the terms of the sale to the vendee, and equally necessary before the vendor can be put in fault. The broker must complete the sale; that is, he must find a purchaser in a situation and ready and willing to complete the purchase on the terms agreed on, before he is entitled to his commissions."

These words, however, must be held to have been spoken, not generally, but in reference to a purchase according to the terms specifically given to the broker by the vendor.

*Richards* v. *Jackson*, 31 Md. 250. This case supports the appellees, in principle. There was a clause of forfeiture, however, in the contract, by which the purchaser could abandon it on payment of two hundred and fifty dollars. But the decision of the case was not put upon this ground.

*Read* v. *Rann*, 10 B. & C. 438. This case bears upon the point in question, but is not analogous to the case we are considering. The suit was brought upon a *quantum meruit* count, and the proof showed a special contract, unfulfilled; and upon this ground, the broker failed to recover, PARKE, J., remarking:

"The claim of the plaintiff rests on the custom, and not on a *quantum meruit*. The custom supposes a special con-

tract between the parties, and if that is not satisfied, no claim at all arises, for no other contract can be implied."

*Kimberly* v. *Henderson*, 29 Md. 512. In this case, the brokers brought the vendor and the vendee together, and they executed certain papers, "whereby they respectively contracted for the sale and purchase of the property, with a stipulation that in case either party should fail to comply with the contract, a forfeiture of one thousand dollars should be paid by the party in default, to the other." The vendee failed to comply with the contract, and paid the forfeiture. This contract could not be mutually enforced between the vendor and the vendee; and upon this ground it was held that the brokers could not recover for their commission. ALVEY, J., in delivering the opinion of the court, remarked:

"Here the undertaking failed. A party was produced, it is true, and a contract entered into through the agency of the appellees, but of such a character that the party contracting, by the exercise of an option given him, relieved himself of the obligation to complete the purchase, and did not, in fact, become the purchaser."

Besides, the brokers inserted a clause in the contract which was not communicated to their principal. True, in this case there is a *dictum* spoken by the judge, which would seem to support the view taken by the appellees, but that, we must suppose, was spoken of the contract before him, and not as a general principle, applicable to all contracts for a broker's commission; at least, being a mere *dictum*, it is not authoritative.

*De Santos* v. *Taney*, 13 La. An. 151. De Santos, a real estate broker, was employed by Taney to sell three houses. Avegno made an offer, through De Santos, to Taney, to buy the houses for fifteen thousand five hundred dollars, which Taney accepted in writing. When the parties met, to have the papers signed by Avegno, he and Taney disputed about the payment of the taxes on the property, Avegno insisting that, by the agreement with the broker, he was to pay but two-twelfths of the taxes, while Taney

insisted that his intention was to have the sum named for his property, without any deduction for taxes; upon this the parties disagreed, and the contract was not consummated. And the decision of the case was made to turn upon the point that the contract failed "on account of the broker's neglect to stipulate clearly concerning the taxes." This case, in its premises and conclusion, does not support the appellees; though BUCHANAN, J., said:

"But all the authorities confirm the doctrine of Judge MARTIN, as we understand it, that no brokerage is due until the sale is complete and executed, that is to say, until the consideration of the sale has passed to the vendor."

We are not convinced that all the authorities confirm this proposition; indeed, we have been unable to find one that carries the doctrine to such an extent.

SPOFFORD, J., in the same case, expresses an opposite opinion. He says:

"I do not think it necessary that the consideration should have passed, but I consider brokerage earned so soon as the broker has effected a complete bargain between the parties."

Here are two *dicta* from different judges, in the same case, quite opposite, while both agree as to the principle upon which the case is decided. This is a strong instance to warn us from following what a judge says, instead of what a court decides. The *dictum* of a judge is very different from the decision of a court, although the judge and the court may be the same person, and the *dictum* and decision in the same case. There is nothing authoritative in a case, except what is required to be decided to reach the final judgment, and what by the judgment becomes *res adjudicata* between the parties as to the subject-matter of the suit.

We have thus carefully examined all the authorities cited by the appellees, and considered the argument in support of their views, but we are unable to adopt the extreme rule contended for by them—approved but by the single case of *Richards* v. *Jackson, supra*, and expressed *obiter* by only one of the judges in the case of *De Santos* v. *Taney, supra*—namely,

"that no brokerage is due until the sale is complete and executed; that is to say, until the consideration of the sale has passed to the vendor." This rule is not supported, indeed we think it is quite overthrown, by the current of authorities; nor does it seem to us to be applicable to the State of Indiana. In this State, lands are bought and sold almost as freely as commodities; they are often mortgaged or pledged as a basis of business operations; sales are made upon deferred payments, for the purpose of holding them as investments; conveyances are frequently executed in trust, for the convenience of the parties; large quantities of lands are held by executive contracts, to facilitate transfers by assignments; in many of which cases the consideration is not paid, and not to be paid, and the titles conveyed in fee, for months and even years, after the sale is made, possession given and full enjoyment had. Under such circumstances, to adopt a rule which would deny the broker his commission until the consideration was paid and the final conveyance executed, would be manifestly unsuitable to our condition, and we think unjust. We are of opinion that when the broker has effected a bargain and sale, by a contract which is mutually obligatory on the vendor and vendee, he is entitled to his commission, whether his employer chooses to comply with or enforce the contract or not. The following authorities support us in our conclusion: *Cook* v. *Fiske*, 12 Gray, 491; *Drury* v. *Newman*, 99 Mass. 256; *Middleton* v. *Findla*, 25 Cal. 76; *Knapp* v. *Wallace*, 41 N. Y. 477; *Stillman* v. *Mitchell*, 2 Rob. N. Y. 523; *Higgins* v. *Moore*, 34 N. Y. 417; *Heinrich* v. *Korn*, 4 Daly, 74; *Rice* v. *Mayo*, 107 Mass. 550; *Mooney* v. *Elder*, 56 N. Y. 238; *Barnard* v. *Monnot*, 40 N. Y. (3 Keyes), 203; *Chapin* v. *Bridges*, 116 Mass. 105.

The case of *Lane* v. *Albright*, 49 Ind. 275, is in harmony with the above authorities in principle, though not in point as to fact with the case we are considering. In that case, the agent was negotiating a sale, but was prevented from completing it, by the act of the vendor in making the sale

himself; in this case, the brokers had completed the sale, but the vendors refused to enforce the contract. We can see no distinction between the cases in principle, as to the rights of the agent or the brokers. In the one case, as the failure to complete the contract was not the fault of the agent, we held that he was entitled to his compensation; in this case, as the failure to enforce the contract after its completion was not the fault of the brokers, we must hold that they are entitled to their commission.

The judgment is reversed; cause remanded, with instructions to sustain the motion for a new trial, and for further proceedings.