McIntyre vs. Rodgers.

McIntyre, Appellant, vs. Rodgers, Respondent.
McIntyre, Respondent, vs. Rodgers, Appellant.

*December 3 — December 17, 1895.*

*Sale of logs: Scale fairly made: Rescale by person not agreed upon: Contract construed: Waiver.*

1. In an action upon a contract for the sale of logs which were to be paid for according to the scale made by one M. unless a rescale was made as therein provided, the evidence (stated in the opinion) is *held* to sustain a finding that M.'s scale was fair and honest and made in the usual and customary manner.

2. The contract provided that the logs might be rescaled by a competent scaler acceptable to both parties and appointed by the district scaler. Upon the evidence — showing, among other things, that the vendor was never informed of any desire or intention to have a rescale made, nor consulted in any way as to the selection or

employment of the scaler; that he did not know that a rescale was being made until about a third of the· logs had been sawed; that he then saw that one S., an employee of the corporation of which the vendee was president, was scaling the logs in question, with others, as they came to the mill, in the usual way, but did not know that this was claimed to be a rescale under the contract or that S. had been recommended for that purpose to the vendee by the district scaler; that he afterwards sent a man to the mill to see how the logs were running, but the latter made no report as to how his scale agreed with that made by S.— it is *held* that there was no rescale according to the contract, and no waiver by the vendor of the stipulations in respect thereto.

APPEALS from a judgment of the circuit court for Marathon county: CHAS. V. BARDEEN, Circuit Judge. *Affirmed on plaintiff's appeal; reversed on that of the defendant.*

· On April 9, 1892, the plaintiff, *McIntyre*, of Wausau, as vendor, sold to the defendant, *Rodgers*, of Muskegon, Mich., as vendee, 20,106 white pine and Norway logs in the Willow and Tomahawk rivers, marked as therein indicated, scaled by McDonald at 1,812,046 feet, and sold and accepted on such scale. It was provided, however, that they might be rescaled by a competent scaler acceptable to both parties and appointed by the district scaler, and that, if such rescale fell short of the quantity mentioned, the plaintiff should stand one half of such shortage, to be deducted from the final payment. The ·plaintiff agreed to drive said logs to the flowage of Tomahawk dam. The price of the logs was to be $6.50 per M feet, and the defendant was to pay $7,000 of the purchase money down to George Silverthorn, and to pay the balance to George Silverthorn on or before September 1, 1892, without interest. For value received, said George Silverthorn guarantied that no liens or claims of any kind were against the logs so sold.

On May 25, 1893, the plaintiff commenced this action, and his complaint alleges, in effect, that, in pursuance of said contract, the plaintiff duly drove said logs during the spring

McIntyre vs. Rodgers.

and summer season of 1892 to the flowage of Tomahawk dam, as agreed therein; that the plaintiff had fully performed all the conditions of said contract on his part; that the defendant never at any time notified him of any desire or intention to rescale the logs, and never requested him to join in agreeing upon a competent scaler to rescale them; that no such rescale as mentioned in the contract had ever been made by any competent scaler, acceptable to both parties; that the defendant paid the plaintiff $7,000 at the time of executing the contract, and $3,000 November 4, 1892; that there is still due and owing to the plaintiff, upon the contract from the defendant, over and above all payments made, the sum of $1,778.30, with interest thereon from September 1, 1892; and he demands a judgment for that amount, with costs.

The defendant's answer consisted of admissions and denials, and, as a defense and counterclaim, alleges in effect that the contract was entered into by the defendant upon the representations of the plaintiff that all of the logs therein mentioned had been duly and carefully scaled in the woods at the time they were cut and banked, by said McDonald, as therein mentioned, and that there were of said logs 1,812,046 feet, board measure; that the defendant believed said representations to be true, and relied thereon; that said McDonald was at the time, by reputation and experience, a reliable scaler, well known as such to the lumbermen in that section of country; that by reason of such representations so made, and such reputation of McDonald as an expert and reliable scaler, the defendant did execute said contract; that in truth and in fact said representations so made were false, and the statement that the logs had been scaled by McDonald was false; that a large and material portion thereof were not scaled by McDonald, but by one Wilson; that there were not, in fact, in the lot of logs so sold, any more than 19,869 logs, nor any more than 1,534,122 feet, board measure. It also

McIntyre vs. Rodgers.

alleges the payment by the defendant of $31.27, December 16, 1892, in addition to what is admitted in the complaint; that under and pursuant to the provisions of the contract the said logs were rescaled prior to the commencement of this action, and before the same were manufactured into lumber, by a competent scaler, acceptable to all the parties to the contract, duly appointed by the district scaler, under and pursuant to the terms of the contract; that the defendant did not discover or have notice or knowledge that the said representations were false until a short time before the commencement of this action; that said logs, being in quantity only 1,534,122 feet board measure, were reasonably worth the contract price, to wit, the sum of $9,961.79, which is $69.48 less than the defendant had paid on and prior to December 16, 1892; and demanded judgment dismissing the complaint, with costs.

A jury having been waived, the court, at the conclusion of the testimony and arguments, found, as matters of fact, in effect, (2) that the plaintiff duly drove all the logs described in said contract to the flowage of Tomahawk dam prior to the commencement of this action, except 208 small logs that sank to the bottom and were not raised and delivered to the defendant until after the commencement of this action; (3) that the logs described in the contract were substantially all scaled by McDonald; that the scale was 20,106 logs, and the same measured 1,812,046 feet, board measure; (4) that said McDonald was then a competent and reliable scaler; that his scale of said logs was honestly and fairly made, and was also made in the usual and customary manner of scaling logs on the Wisconsin river and its tributaries; (6) that the plaintiff did not, at any time, make any false or fraudulent representation concerning said logs, or the number or scale thereof, to the defendant; (7) that Moses Sarchet was recommended to the defendant by the district scaler to scale said logs; that said Sarchet scaled substantially all the

logs delivered by the plaintiff to the defendant in 1892, and that his rescale of said logs was 19,869 logs, measuring 1,534,122 feet; (8) that the rescale of said logs by Sarchet was made with the knowledge and without the objection of the plaintiff; that it was such a rescale as was agreed upon in the contract, and that the plaintiff was bound thereby; (9) that the 208 logs which so sank in the river were all small, and their total measurement did not exceed 16,060 feet; (10) that the defendant paid the plaintiff, December 16, 1892, $31.27, as mentioned in the answer; that said payments were partial payments, and not made conditional upon their being accepted by the plaintiff as payments in full; (11) that the quantity of logs for which the plaintiff is entitled to receive payment from the defendant is 1,665,054 feet, amounting at the contract price to $10,822.85; (12) that there was still due and owing to the plaintiff from the defendant December 16, 1892, $844.24, no part of which had been paid; (13) that, upon all the issues of fact in which no express finding of fact is made, the court finds for the plaintiff.

As conclusions of law, the court found that the plaintiff was entitled to recover from the defendant $844.24, with interest thereon from December 16, 1892, and for his costs and disbursements in this action, and ordered judgment accordingly. From the judgment so entered, and the whole thereof, both parties appeal to this court.

The cause was submitted for the plaintiff on the briefs of *Silverthorn, Hurley, Ryan & Jones,* and for the defendant on those of *Hetzel & Smart.*

To the point that a scale of logs must be an actual measurement thereof, and not a measurement of part and an estimate of the balance, counsel for the defendant cited *Douglas v. Leighton,* 53 Minn. 176; *Pratt v. Ducey,* 38 id. 517.

CASSODAY, C. J.   By the terms of the contract the plaintiff sold to the defendant 20,106 logs then in the Willow and

Tomahawk rivers, scaled by McDonald at 1,812,046 feet, and to be driven by him to the flowage of the Tomahawk dam. One branch of the defense is to the effect that the defendant had been induced to make the contract relying upon the false representations of the plaintiff that there were the number of logs stated and that McDonald had actually scaled the same at the number of feet mentioned, whereas McDonald had only scaled a part of the logs; that there were 237 logs short; and that the measurement was 277,924 feet less than represented. As indicated in the foregoing statement, the court found against such contention of the defendant, and to the effect that, of the logs so claimed to be short, 208 had sunk and were not raised and delivered to the defendant until after the commencement of this action,— making a difference of only twenty-nine logs; that McDonald was then a competent and reliable scaler; that he honestly and fairly made the scale in the usual and customary manner; and that the plaintiff at no time made to the defendant any false or fraudulent representation concerning the logs, or their number, or the scale thereof.

It appears that the logs were taken from the different camps some four or five miles apart, one of which was called the "McIntyre Camp," and the logs from that camp were put in the Tomahawk river. The others were banked by Wilson, and by him put into the Willow river. It is, in effect, conceded that McDonald honestly and fairly scaled all the logs at the McIntyre camp, and that there were by such scale 17,003 logs, containing 1,455,001 feet. The balance of the logs were banked and put in by Wilson at the other camp; and according to the statement of the plaintiff to the defendant, and the testimony of McDonald, there were of those logs, by his scale, 3,103 containing 357,045 feet. It appears that McDonald first went to scale the Wilson logs near the mouth of the creek in February, 1892; that he was alone, and actually measured by the scale all he

could get at handily to measure, and marked each log as he numbered it, and then counted the rest of them, and averaged them with those he had actually put the scale stick upon, marking each log at one end or the other, as he counted it; that he went a second time in March, 1892, to scale those logs Wilson had banked at a different landing, and where he found that most of the logs were numbered and had been scaled by Wilson, who had a card containing an account of each log so scaled and numbered by him; that the logs so numbered were entirely separate from the unnumbered logs; that he scaled the unnumbered logs the same as he had those in February; that, as to the numbered logs, he measured more than half of them, piece by piece, and called out the number of each log to Wilson, who had his scale card with him, and who gave him his scale of the log bearing the number called by him; that in that way he scaled half or more of the numbered logs; that sometimes he found Wilson had given a little more or less than his scale of the logs; that he kept an account of such differences,— of the " overs " and " shorts,"— and thereby found Wilson's scale to be correct, and adopted it as his own, so far as the numbered logs were concerned; that while so doing he did not give Wilson his measurement until after Wilson had given to him his measurement; that Wilson was not near enough to him to see the log he was scaling; that, from his comparisons with Wilson, he became satisfied as to the scale Wilson had made; that he found there was only a trifling difference between them, and that his own scale was a little larger than Wilson's; that he counted all the numbered logs, as well as the unnumbered logs; that he actually made a piece scale of more than half of the entire lot of logs put in by Wilson, and that he was sure the result he obtained was correct; that the manner in which he arrived at the scale of those logs was the only way it could be done. The defendant's son, residing at Tomahawk, and

who negotiated the contract and superintended the defendant's business, examined the logs at the McIntyre camp, and also the logs so banked by Wilson, the last of March, 1892, and after they were all in, and he testified to the effect that there were three or four times as many in the McIntyre camp as of the Wilson logs. This corresponds very nearly with the testimony of McDonald.

We must conclude that the trial court was fully justified in holding that McDonald's scale was fair and honest, and made in the usual and customary manner. The logs were purchased by the McDonald scale, and the only other way that the defendant could relieve himself from paying the full amount of that scale, according to the contract price, was to have a rescale as provided in the contract; and then he could have only a deduction of one half of any shortage found.

The court found on that branch of the defense to the effect that the logs were rescaled by Sarchet with the knowledge and without the objection of the plaintiff, and hence that he was bound by it. The trial judge, in his opinion, states, in effect, that he was in great doubt as to what his holding should be in that regard; but, upon equitable considerations, he thought it best to hold that the plaintiff had waived the provision of the contract as to the selection of a person to rescale the logs. The language of the contract is " that they *may be rescaled* by a competent scaler *acceptable to both parties* and appointed by the district scaler." This is not a bill in equity, but is an action at law on contract. The contract did not imperatively require a rescale, but simply provided that one might be made by a competent scaler acceptable to both parties. This implies that the plaintiff should have notice of the proposed rescale, and an opportunity to accept or object to any person who might be suggested for the appointment of such scaler. Sarchet, mentioned in the findings, was employed by the corporation of

which the defendant was president to scale the logs coming into its mill, and he scaled the logs in question as they came into the mill. The plaintiff testified to the effect, and it appears to be undisputed, that he was never informed of any desire or intention on the part of the defendant to have a rescale of the logs under the contract; that he was not requested to join in the selection of a scaler, nor consulted in any way in respect to the employment of such scaler; that he had no knowledge that Sarchet or any one was to be or had been appointed such scaler by the district scaler; that he did not know that a rescale of the logs was being made by Sarchet until about 600,000 feet of these logs had been sawed; that he then saw that Sarchet was scaling all logs that came into the mill — the logs in question and others — in the usual way, but did not then know that the defendant was relying upon or claiming such scale to be a rescale under the contract; that he afterwards sent Rasmunson there to see how the logs were running — how many to the thousand,— but he made no report as to how his scale compared with that made by Sarchet. We must hold that there was no rescale as prescribed in the contract, and that the plaintiff did not waive the stipulations therein respecting such rescale.

The result is that the plaintiff is entitled to recover for the quantity of logs mentioned in the contract, as scaled by McDonald, at the contract price, less the three payments mentioned; that is to say, he is entitled to recover $1,747.02, with legal interest thereon from September 1, 1892.

*By the Court.*— On the defendant's appeal, in so far as the judgment is based on findings in favor of the plaintiff, the judgment is affirmed; and on the plaintiff's appeal the judgment is reversed, and the cause is remanded with directions to enter judgment in favor of the plaintiff and against the defendant in accordance with this opinion.