A. C. HOUSE v. J. H. ABELL AND H. G. GRAY.

(Filed 14 December, 1921.)

**1. Principal and Agent—Brokers—Contracts—Commissions—Voluntary Abandonment of Contract—Vendor and Purchaser—Timber.**

Where the owner of standing timber enters into a written contract with another that upon the sale of the timber to an acceptable purchaser upon specified terms, and at a certain price, the agent or broker should receive an agreed compensation for his service to be rendered, the broker's right of compensation arises upon the procurement of such purchaser according to the terms agreed; and this is not affected afterwards by the owner's voluntarily abandoning this contract, or not insisting upon its performance by the said purchaser.

**2. Same—Modification of Contract—Arbitration and Award.**

Where the owner of standing timber has agreed with a broker that if he procured a purchaser upon specified terms and price he should receive a fixed sum for the services thus rendered; and the broker has complied with his contract according to its terms, the owner may not avoid paying

his broker by agreeing with the purchaser to submit to arbitration the question of the quantity of timber sold, and abandon his contract upon the disagreement between the arbitrators as to the rule of admeasurement of the timber.

### 3. Same—Deferred Payment of Purchase Price.

Where the broker has procured a purchaser for the owner for his standing timber upon a large body of land for $135,000, to be paid $45,000 in cash, and the balance to be due yearly over a period of five years, the consideration to the broker being $3,000, the contract for the payment of the commissions to the broker, nothing else appearing, does not contemplate that he should await therefor during the period extended for the deferred payments to be made by the purchaser; but he is entitled to his compensation, at the time he has performed his obligations according to the contract.

### 4. Principal and Agent—Brokers—Contracts—Commissions—Conditions Precedent.

Where a contract for the sale of the owner's timber through a broker sets forth the terms of the sale at length with which the purchaser shall comply, and the broker's commission is predicated and made dependent upon the conditions that "the deal will go through," these words refer to the "deal" going through upon the terms agreed upon with the broker, and not to such terms as the owner may have thereafter agreed upon with the purchaser whom the broker had procured.

Appeal by defendant from *Kerr, J.,* at the January Term, 1921, of Halifax.

Civil action to recover $3,000, with interest, as an amount alleged to be due plaintiff for commission in affecting a sale of the timber on a certain tract belonging to defendants. The court being of opinion that plaintiff was entitled to recover on the facts admitted in the pleadings, judgment was so entered, and defendants excepted and appealed.

*George C. Green and W. E. Daniel for plaintiff.*
*F. H. Brooks, Travis & Travis, and Butler & Herring for defendants.*

Hoke, J. Plaintiff filed his complaint, duly verified, in terms as follows: ·

#### COMPLAINT.

The plaintiff, complaining of the defendant, alleges:

1. That the plaintiff is a resident of the county of Halifax, State of North Carolina, and the defendants are residents of the county of Johnston, State of North Carolina.

2. That on 9 April, 1920, the defendants wrote plaintiff the following letter:

SMITHFIELD, N. C., 9 April, 1920.

MR. A. C. HOUSE, Weldon, N. C.

DEAR SIR:—We agree to pay you the sum of three thousand dollars ($3,000) to make sale for us of. our tract of timber near Clinton, N. C., at the price and on the terms outlined in our letter to you of this date.

Yours very truly,

R. G. GILLETT,

ABELL & ˚GRAY,

By J. H. ABELL.

3. On 9 April the defendants wrote the plaintiff the following letter, which is the letter referred to in the preceding paragraph:

SMITHFIELD, N. C., 9 April, 1920.

MR. A. C. HOUSE, Weldon, N. C.

DEAR SIR:—We hereby authorize you to make sale for us on or before 12 April, 1920, of our tract of timber near Clinton, N. C., at the price of $135,000, on the following terms: $45,000 cash, and the balance in five equal annual payments.

We agree to sell an option on the timber at the price and on the terms mentioned for a period of sixty (60) days for the sum of $10,000, this amount to apply on the purchase price in case the option is exercised.

Yours very truly,

R. C. GILLETT,

ABELL & GRAY,

By J. H. ABELL.

4. On 13 April, 1920, the defendants wrote the plaintiff the following letter, to wit:

SMITHFIELD, N. C., 13 April, 1920.

MR. A. C. HOUSE, Weldon, N. C.

DEAR SIR:—Following up our conversation with reference to sale of the A. T. Griffin Manufacturing Company timber in Sampson County, beg to say that if the deal with Camp Manufacturing Company shall go through, and the final timber estimate shall fall below twenty-two and one-half (22½) million feet, and the purchase price be thereby reduced below $135,000, we still agree to pay you the sum of three thousand dollars ($3,000) for your services.

R. C. GILLETT,

H. G. GRAY.

J. H. ABELL.

5. On 12 April, 1920, the Camp Manufacturing Company wrote the plaintiff the following letter, to wit:

FRANKLIN, VA., 12 April, 1920.

MR. A. C. HOUSE, Weldon, N. C.

DEAR SIR:—*In re* A. T. Griffin Manufacturing Co.'s timber holdings in Sampson County, N. C.:

Confirming the conversation with you today in regard to timber in Sampson County, N. C., known as the A. T. Griffin Mfg. Company's holdings, consisting of about 77 tracts and covered by 51 deeds, which tracts you estimate at about 25,000,000 feet; time to cut 5 years, with 5 years further time by paying 6 per cent interest on the original purchase price.

If there is 23,000,000 feet of timber on these tracts, which tracts are covered by the various deeds to the Griffin Manufacturing Company, we will give you, or the now owners of the timber (Abel & Gray), $135,000 for this timber, payable as follows: $45,000 cash, and the balance in 1, 2, 3, and 4 years, with 6 per cent interest from date of papers. Should you and your associates accept this proposition, we are to pay $5,000 on acceptance, and the balance of the cash payment, to wit: $40,000, when estimate is completed and satisfactory deed delivered to us; all papers to be dated 1 June, 1920.

To arrive at the estimate of the quantity of timber on this land, we are willing to follow the following procedure, that is to say, we put in a man and you a man, and we together to select the third man, the third man to be a man who has never estimated timber for either of us, or at least the third man is to be satisfactory to us; our man and your man to go in and estimate the timber and on any tract or tracts that our men cannot agree upon, then we are to call in the third man, as stated above, and he is to send us report of every tract of timber he estimates, and he is not to estimate to exceed four tracts before we get the estimate, and if the third man, or umpire, is not satisfactory to either party, then either party has a right to call him off and put in another third man to estimate not to exceed four tracts of timber (the selection of this third man to be in the same manner as referred to above) before we receive the estimate, and if this estimate is not satisfactory, then we could call him off and continue the selection of a third man in the manner referred to above until all the timber is estimated and terms and conditions of estimating as above outlined complied with.

If you give us an option, we would start our man in there just as soon as we could and continue estimating until we complete the whole transaction, and all of it should be closed up within sixty days, unless extended by agreement between all parties concerned.

If, however, there is not 23,000,000 feet of timber on the various tracts referred to, constituting the A. T. Griffin Manufacturing Company's holdings, and the actual amount of timber, by estimate agreed upon, does not come to $135,000, we would take the quantity of timber shown by estimate at $6 per thousand feet. If there is not 23,000,000 feet, and we should buy the timber at the rate of $6 per thousand feet, we will pay $45,000 cash, and the balance in 1, 2, 3, and 4 years, with 6 per cent interest from date of papers; the cash payment, however, to be less $5,000, which amount is to be paid in case our proposition is accepted.          Yours very truly,

CAMP MANUFACTURING COMPANY,

pdc/b                    By ............................., *President.*

6. That the letter referred to in the preceding paragraph was delivered to the defendants, and on 13 April, 1920, the defendants wrote the Camp Manufacturing Company, Franklin, Va., the following letter, to wit:

SMITHFIELD, N. C., 13 April, 1920.

CAMP MANUFACTURING Co.,
          Franklin, Va.

GENTLEMEN:—We have noted your letter of the 12th inst., addressed to Mr. A. C. House, with reference to the timber holdings of A. T. Griffin Manufacturing Company in Sampson County, consisting of about 77 tracts, covered by 51 deeds, and beg to say that we have decided to accept your proposition to pay $135,000 for the same, $5,000 to be paid cash, and $40,000 to be paid when estimate is completed and contract made, but it is understood that we are selling you all the timber owned by A. T. Griffin Manufacturing Company in Sampson County, covered by the 51 deeds, with time for cutting and removing same as therein specified, which is approximately five years, with five years extension by paying 6 per cent interest on original purchase price of same. Estimate of timber to be made according to method set out in your letter to Mr. House, and should estimate not amount to 22,500,000 feet, then said timber to be paid for according to estimate at price of $6 per thousand feet.

After the payment of the $45,000, the balance of the purchase price of said timber is to be divided into four equal payments to be made annually, with interest at 6 per cent from 1 May, 1920, with provisions that in case you wish to cut any of said timber, same shall be paid for in advance at the rate of $6 per thousand feet, which payment shall be applied to the next annual installment falling due.

Upon receipt of this letter (which is sent by Mr. House), we will thank you to send us your check for $5,000 according to your proposition contained in letter of the 12th inst., to Mr. House. If you desire more formal contract before paying the $5,000, we shall be glad to meet you or your attorney in Smithfield and enter into any reasonable arrangement with you respecting the matter.

We are holding Mr. Ashley at Clinton to meet your estimator and go over these several tracts of timber and make joint estimate of this timber, which, of course, is at considerable expense, and we trust you will proceed at your earliest convenience to send your man to Clinton to enter upon this work.

Thanking you in advance for your early reply, we are,

Yours very truly,

---------------------------------------------

That the above letter was given to the plaintiff to be by him delivered to the Camp Manufacturing Company, and on 14 April, 1920, he wrote the Camp Manufacturing Company the following letter, to wit:

FRANKLIN, VA., 14 April, 1920.

MR. P. D. CAMP, *President,*
      CAMP MFG. CO.,
            Franklin, Va.

DEAR SIR:—I herewith hand you letter of acceptance from Messrs. Abell, Gray & Gillett in which they agree to sell you the holdings of A. T. Griffin Manufacturing Company as per your offer in your letter to me of the 12th inst.

You will note that the amount of timber as mentioned in your letter of 23,000,000 feet has been changed in their acceptance to 22,500,000 feet, which was done at my request, because if there had been more than 22,500,000 feet and less than 23,000,000 feet you would have paid more than $135,000 for it.

Messrs. Gillett, Abell & Gray requested me to say to you that Mr. Griffin, of the A. T. Griffin Manufacturing Company, wishes to make bond-of-title, securing from you contract to carry out the terms of payment, and not taking your notes for the deferred payments, he believes if he takes your notes that he will have to give it in as income received during this year, and it is his desire to distribute this income over a period of four years, during which time the actual payments are to be. I think he is so advised by his attorney. I do not know just what a bond-of-title is, but your attorney can advise you along this line, and if you can do so, I believe it would be good policy to accommodate Mr. Griffin. However, if this cannot be worked out satisfactorily to

yourself and Messrs. Gillett, Abell & Gray, it is their desire to satisfy you in the matter, even to the extent of their paying Mr. Griffin cash for the timber and giving you a straight deed secured by a deed of trust. You will note that there is a provision in the letter of acceptance, providing that you might cut timber prior to the payment of the deferred payments by paying in advance at the rate of $6 per thousand feet. There was nothing in your letter which mentioned this, and this provision was put in to cover any case in which you might wish to cut the timber before all the payments had been made. Messrs. Gillett, Abell & Gray also requested me to say to you that they were willing to meet your attorney or representative and enter into any reasonable agreement as regards details to carry out the terms and spirit of your offer to them in their letter of acceptance to you.

If I can be of any further service to you in this transaction, kindly advise me. I will be away from Weldon a few days the first of next week, but after that time I see no reason why I cannot act for you on short notice.

I have left the deeds to all the Griffin holdings in your office, and wish to call your attention to the fact, as I mentioned when here on the 12th, that there are two deeds to small tracts of timber in this lot carrying five years to cut and five years extension, and one carrying seven years to cut and five years extension.

All of the other deeds, as I have read them, carry ten years to cut with five years extension. All the deeds, I think, are dated in the latter part of 1914, and early part of 1915.

Yours very truly,

---

7. That on 17 April, 1920, the Camp Manufacturing Company wrote the defendant the following, to wit:

17 APRIL, 1920.

MESSRS. R. C. GILLETT, H. G. GRAY, and J. H. ABELL,
Smithfield, N. C.

GENTLEMEN:—*In re* purchase of A. T. Griffin Manufacturing Company's timber holdings in Sampson County, N. C.:

We are in receipt of your letter of the 13th accepting our offer of the 12th.

We have written to try to get estimators, and will get estimators to go in the timber just as soon as we can, and we thought it would be well for us to try to agree upon the third party. Do you know of any good man to act as umpire? Check for $5,000 has been made up and turned over to Mr. T. D. Savage, our attorney, Norfolk, Va., for delivery to

HOUSE *v.* ABELL.

you as soon as some little details concerning the contract have been satisfactorily worked out between your attorney and Mr. Savage. We would thank you to kindly advise Mr. Savage who your attorney is, so that he can get in communication with him.

Yours very truly,

CAMP MANUFACTURING COMPANY,

pdc/b                    By ................................, *President.*

CC: to Mr. A. C. House, Weldon, N. C.

8. That the Griffin timber, the A. T. Griffin Manufacturing Company's timber is the same timber mentioned in the two letters of the defendants of 9 April and 13 April, and the letters of the Camp Manufacturing Company to A. C. House of 12 April, 1920, and the letter of the defendants to Camp Manufacturing Company, dated 13 April, 1920, above referred to, and also the letter of the plaintiff to Camp Manufacturing Company, dated 14 April, 1920, and above referred to, and also the letter of Camp Manufacturing Company to defendants, dated 17 April, 1920.

8½. The defendants wrote the plaintiff the following letter, to wit:

SMITHFIELD, N. C., 31 May, 1920.

MR. A. C. HOUSE, Weldon, N. C.

DEAR MR. HOUSE:—We beg to advise that we have been to see the Camp Manufacturing Company, and have returned to them the $5,000 paid on the contract, and have canceled the same because they insist on the Doyle rule in estimating the timber. We are, therefore, no longer under obligation to them.                    Yours very truly,

R. C. GILLETT,

ABELL & GRAY,

By J. H. ABELL.

9. That the Camp Manufacturing Company, through the efforts of the plaintiff, actually contracted to purchase of the defendants the timber mentioned in the preceding paragraphs, and actually paid the defendants the sum of $5,000 called for in said contract.

10. That the plaintiff has performed his part of said contract in full, and has demanded payment of the sum of $3,000 of the defendants, which they have failed and refused and still refuse to pay.

11. That by reason of the matters and things above set out, the defendants are indebted to the plaintiff in the sum of $3,000, with interest from 13 April, 1920.

Wherefore, plaintiff demands judgment against the defendants for the sum of $3,000, with interest, and for cost.

Defendants filed answer to said complaint, duly verified in terms as follows:

The defendants, answering the complaint of the plaintiff herein filed, allege:

1. That paragraph one of the complaint is admitted.
2. That paragraph two of the complaint is admitted.
3. That paragraph three of the complaint is admitted.
4. That paragraph four of the complaint is admitted.
5. That paragraph five of the complaint is admitted.
6. That paragraph six of the complaint is admitted, wherein it is alleged that the defendants wrote the Camp Manufacturing Company the letter set out in paragraph six of the complaint.

As to the remainder of said paragraph, these defendants have no knowledge, and therefore deny the same.

7. That paragraph seven of the complaint is admitted.
8. That paragraph eight of the complaint is admitted, except where it is stated that the plaintiff wrote the Camp Manufacturing Company on 14 April, 1920, of which these defendants have no knowledge, and therefore deny the same.

9. That paragraph nine of the complaint is denied.
10. That paragraph ten of the complaint is denied.
11. That paragraph eleven of the complaint is denied.

There was a further answer duly verified alleging in effect that defendants owed plaintiff nothing because by the terms of the agreement they were only liable in case the "deal with the Camp Manufacturing Company goes through"—and that no sale had ever been consummated, nor had defendants ever received anything thereon for the reason further stated that after the interchange of the letters and writings above set forth, and after defendants had received the $5,000 check given by the Camp Manufacturing Company as part payment on the alleged contract, when defendants met for the purpose of proceeding with the deal, the estimator selected by the Camp Manufacturing Company, one S. R. Flowers, insisted that the timber be estimated by the Doyle rule, and would consent to no other, and that ascertaining that under such rule the amount of defendants' timber would be reduced 25 to 33 per cent. Defendants were, therefore, forced to call off the proposition and returned to the Camp Manufacturing Company the $5,000 it had paid on the transaction.

Upon this, a sufficient statement for a proper apprehension of the question presented, we concur in the ruling of the court below that on the admissions appearing in the pleadings the plaintiff is entitled to judgment. It is a well established principle that a real estate broker, employed by the owner to make sale of designated real estate, who,

within the terms of the authority given, succeeds in bringing about a building contract of sale with a responsible purchaser, is entitled to his stipulated commission, or to the reasonable worth of his services if no definite amount is specified, and his claim therefor is not affected because the principal has seen proper to voluntarily surrender his rights under the contract. *Aycock v. Bogue, ante,* 105; *Love v. Miller,* 53 Ind., 294; *Lunney v. Healey,* 56 Neb., 313, reported also in 44 L. R. A., 593; *Seabury v. Fidelity Insurance, Trust and Safe Deposit Company,* 205 Pa. St., 234; *Parker v. Walker,* 86 Tenn., 566; *Wilson v. Mason,* 158 Ill., 304; *Parmly v. Head,* 32 Ill. App., 134; *Swainwald v. Cady,* 92 Cal., 83; *Leets v. Norton,* 43 Conn., 219. *Love v. Miller, supra,* is reported also in 21 American Reports, 192, where the principle is thus stated in the syllabus: "Where the owner of real estate agreed with the broker that if the latter would find a purchaser for designated real estate, he would give a certain sum as commission. The broker procured a person to enter into a valid and binding contract to purchase, which he afterwards refused to perform: *Held,* the broker was entitled to the sum agreed upon." In the second headnote to *Lunney v. Healey,* in 44 L. R. A., p. 593, it appears: "That where a real estate broker contracts to produce a purchaser who shall actually buy, he has performed his contract by the production of one financially able, with whom the owner actually makes an enforceable contract of sale. The failure to carry out the contract, even if the default be that of the purchaser, does not deprive the broker of his right to commissions." And in *Parker v. Walker,* 86 Tenn., *supra,* it is held: "A broker, who agrees for compensation 'to procure a purchaser' for lands, has earned his commissions when he effects a valid written contract for sale of the lands, upon terms and with a purchaser acceptable to the owner. Neither the purchaser's refusal to perform his contract upon grounds not imputable to the broker's fault, nor the voluntary failure of the vendor to compel him to do so, will defeat the broker's claim for commissions." From a proper consideration of the letters and correspondence, there was a binding contract of sale between the defendants and the owners and the Camp Manufacturing Company, of all the timber on 77 tracts of land contained in 51 deeds, and known as the holdings of the Griffin Manufacturing Company in Sampson County, at a designated price agreed and acted upon by the parties as within the authority conferred upon the broker. Even if the letter of defendants of 13 April, 1920, should be considered as modifying the terms contained in the definite offer of the purchaser, the Camp Manufacturing Company, of 12 April, these modifications, if they be such, were acquiesced in by the Camp Company, the other contracting party, and the company's check for $5,000 was given and received in part compliance with the contract. And as to

the stipulation for the commission while the first agreement for $3,000 was based on a sale at $135,000 in defendant's letter of 9 April, 1920, pp. 1 and 2 of the record. In a subsequent letter, also on p. 2, of 13 April, defendants agreed to pay the $3,000 for effecting a sale though the price should fall below $135,000. It is insisted for defendants that no rule or standard of measurement for the timber having been specified in the agreement, the same was thereby rendered too indefinite to constitute a binding contract of purchase. As we have seen, the contract contained an agreement to sell all the timber on certain designated tracts of land at a stipulated price, and the agreement itself affords a means for determining the quantity, that is, that each of the parties should select a man as estimator, and the two parties together to select the third man. And if it were otherwise, if, as defendant contends, the contract failed to specify a rule by which the timber should be estimated, the approved position is, the agreement being otherwise definite and complete, that the timber shall be measured according to the standard ordinarily prevailing in such cases. 25 Cyc., p. 1560, citing *Sanderson v. Hagan,* 7 Fla., 318; *McIntyre v. Rodgers,* 92 Wis., 5; *Heald v. Cooper,* 8 Me., 32. Again, it is contended that the subsequent agreement for $3,000 appearing in defendant's letter of 13 April, 1920, was predicated and made dependent upon the proposition that the "deal with the Camp Manufacturing Company should go through." The entire letter in reference to the proposed sale being "that if the deal with the Camp Manufacturing Company should go through and the final estimates should fall below 22½ million feet and the purchase price be reduced below $135,000, we still agree to pay you $3,000 for your services." It will be noted that when this letter was written no contract had been made, and the terms of the deal with the Camp Manufacturing Company should go through "clearly means if the negotiations in which you are now engaged should result in a binding contract of sale." In view of the terms used, this was the natural significance of the language, and afforded the correct and reasonable interpretation of the agreement. In one aspect of the contract, as proposed by the Camp Manufacturing Company, the cutting of the timber and the partial payments therefor would extend over four years, and it would not be contended that the parties contemplated any such delay before plaintiff should receive his commissions. In our opinion on the facts presented, there was a binding agreement between the parties for sale of the timber effected by the plaintiff as broker, and in which defendants have voluntarily surrendered their rights, to plaintiff's prejudice, and that said plaintiff has been properly allowed to recover as per terms of the agreement.

Affirmed.

STACY, J., dissents.