STEPHEN MONROE

*v.*

EDGAR M. SNOW *et al.*

*Filed at Ottawa January 21, 1890.*

1. EVIDENCE—*res gestæ—general rule.* Where an alleged transaction is disputed, anything said, done or written in the presence of the parties, as the immediate, unpremeditated and spontaneous result of such transaction, is admissible in proof of the fact that the transaction occurred, or of its true significance.

2. SAME—*entry in book at the time—res gestæ.* So an entry made by a party in his own books, in the presence of the other party, at the time of an interview respecting a transaction, is admissible as original evidence of such matter.

Syllabus.

3. A real estate broker employed to sell real estate, during an interview with his principal, and in his presence, entered in his sales book the asking and also the selling price for the property, the latter being in cipher. In a suit to recover compensation for finding a purchaser, there was a dispute as to the selling price, and the plaintiff, in connection with his testimony, offered the entry on his books in evidence as to such price, which the court admitted: *Held*, that the entry was properly received as a part of the *res gestæ* of the transaction, it being, as such, original evidence.

4. SAME—*explanatory matters—in rebuttal*. In a suit by real estate brokers to recover commissions on a sale of land, the plaintiffs testified that they were authorized to sell at $90,000, and that an entry was made in their sales book of a description of the property, showing asking price to be $100,000, and the selling price, in cipher, at $90,000. The defendant denied authorizing a sale at the last named price, and introduced in evidence a postal card, signed by plaintiffs, directed to defendant, asking if any change in price was desired, and stating $100,000 as the price. On this card was the letter B and the figures 112, which the proof showed was a reference to book B, page 112, where the private mark indicating the price was to be found: *Held*, proper for the plaintiffs, in rebuttal, to show that the card was filled by a clerk under general orders, who took the figures $100,000 from the sales book, and that he did not know the meaning of the private marks: *Held*, *also*, that the entry in the sales book at the page referred to was properly admitted, in further explanation of the apparent contradiction.

5. SAME—*proof to show a sale was made—by an agent or broker*. In a suit by a real estate broker to recover for his services in finding a purchaser of land, a written contract signed by the broker and the purchaser is proper evidence as tending to show the making of a valid sale, binding on the purchaser and enforcible against him.

6. PRINCIPAL AND AGENT—*compensation to the latter for selling real estate*. A real estate broker employed to make a sale of land, who finds a purchaser at the price fixed by the owner, who is ready, able and willing to take a conveyance and pay the purchase price, has earned the compensation agreed to be paid ; or, if the compensation has not been fixed by the parties, he will be entitled to recover the usual and customary reasonable compensation for the services performed.

7. STATUTE OF FRAUDS—*sale of land—authority to agent*. A person may employ a broker or agent to negotiate a sale of real estate without giving him a written authority to do so. As between the vendor and vendee, the authority of the agent must be in writing, but the rule goes no further.

8. PRACTICE—*directing what the verdict shall be*. In a suit to recover compensation for making sale of property for $90,000, there was no

proof of the reasonable value of such services, but it was stipulated that, in the absence of an agreement, the rate of commissions allowed on a sale of that amount was two and one-half per cent. The court instructed the jury, that if they found for the plaintiff, their verdict should be for two and one-half per cent on $90,000: *Held,* that there was no error in the instruction, as there was no dispute as to the amount recoverable, if anything.

9. NEW TRIAL—*newly discovered evidence.* A new trial will not be granted to let in other evidence which is cumulative, merely, or for the purpose of impeaching a witness, unless it clearly appears that the cumulative testimony will be decisive as to the rights of the parties.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. JOHN P. ALTGELD, Judge, presiding.

This was an action of assumpsit, in the Superior Court of Cook county, by Edgar M. Snow and Theodore G. Dickinson, partners, against Stephen Monroe, to recover commissions on the sale of certain real estate. The defendant, residing at Albion, Michigan, who was the owner of certain real estate in the city of Chicago, known as Nos. 190 and 192 Fifth avenue, called at the office of the plaintiffs, in Chicago, in December, 1884, and requested them to sell the same for $100,000, if they could get that price, but not to sell for less than $95,000. Plaintiffs made a memorandum describing the property, giving a brief description of the house and its rental, and entering the price of the premises at $100,000. This memorandum was entered on their sale book, and the property advertised for sale. Following the price so entered, the plaintiffs put their private mark or cipher, showing $95,000 as the selling price. On the 31st day of October, 1885, the property not having been sold, the defendant again called at plaintiffs' office, and authorized Snow, as plaintiffs claim, to sell for $90,000, if he could do no better, of which price Snow made a second memorandum in their book, using the firm's private mark. On December 10, 1885, the defendant, in answer to a letter of inquiry asking whether he would take $80,000, etc., wrote

the plaintiffs that he would not take less than $90,000. On December 15, 1885, in answer to another letter of plaintiffs, somewhat depreciating the property, and asking if he would take $85,000, the defendant wrote that he could not think of taking less than $90,000, and that he did not care much to sell at that price. These letters were put in evidence, and it appears that they were the only authority in writing authorizing the plaintiffs to sell, if they can be so considered.

Dickinson testifies, that in December, 1884, defendant called at plaintiffs' office, said the price for his property was $100,000, and asked Snow if he thought he could get $95,000; that Snow thought he could, and that defendant then said he would like to have him (Snow) sell it—that $100,000 was the asking price, and $95,000 the taking price; and that in October or November, 1885, defendant again called at plaintiffs' office and directed Snow to sell the property for $90,000. On February 13, 1886, defendant was again at plaintiffs' office, and three or four days after went to California. February 27, 1886, the plaintiffs telegraphed and also wrote defendant that they had on that day sold the property for $90,000. In reply, the plaintiffs received, and put in evidence, the following telegram:

"Los Angeles, Cal., *March 3, 1886.*

"Your telegram just came to hand. I do not want to sell. See letter.               S. Monroe."

In the letter referred to in the telegram occur the following words: "In my talk with you last, I told you I did not care to sell at that price,—$90,000." Another telegram received by the defendant was introduced, as follows:

"Los Angeles, Cal., *March 4, 1886.*

"Wrote you yesterday; do not want to sell.

              S. Monroe."

Plaintiffs next received a letter from the defendant, which they read in evidence, in which the defendant says: "You must have forgotten that when I was in Chicago, on my way

9—131 ILL.

here, in February, I told you I then would not sell for $90,000, but my price was $100,000. * * * Now I will say that I am not ready to sell even at $100,000." The plaintiffs received still another letter, as follows:

"Los Angeles, Cal., *March 25, 1886.*
* * * "I wrote you that you had no authority to sell my Fifth avenue property for less than $100,000, therefore I could not give my consent to your sale."

Appellees received yet another letter from appellant, and introduced in evidence by appellees, in which appellant says: "But you say that I was in your office as late as February 13, and did not change the price. I was in your office two or three days before I left Chicago. I went there for the express purpose of saying to you that my price then was $100,000. You told me then and there that you thought it was worth a hundred thousand dollars, * * * but not for sale just now."

On the trial the following admission was made: "It is admitted by the parties, that, in the absence of an agreement, the rate of commission allowed upon sale of real estate of this size is two and one-half per cent." A trial resulted in a verdict and judgment in favor of the plaintiffs for $2250. On appeal to the Appellate Court this judgment was affirmed, and the defendant below prosecutes this appeal. Other material facts appear in the opinion.

Mr. Nelson Monroe, and Mr. F. W. S. Brawley, for the appellant:

It was error in law, at the trial, to allow appellees' books in evidence. 1 Starr & Curtis' Stat. 1076, sec. 3; *Presbyterian Church* v. *Emerson*, 66 Ill. 271; *Patrick* v. *Jack*, 82 id. 81; *Stettauer* v. *White*, 98 id. 77; *Ruggles* v. *Gatton*, 50 id. 416; *Railroad Co.* v. *Adler*, 56 id. 348.

It was error of law to allow the contract in evidence, and to give the jury the first instruction asked by appellees.

When an agent is employed at a fixed price, and finds a purchaser, but the owner refuses to accept the offer, the agent is not entitled to the commission. 1 Sugden on Vendors, 68; *Power* v. *Kane*, 5 Wis. 268; *Coleman* v. *Meade*, 13 Bush, 361; *Barnard* v. *Monnot*, 34 Barb. 90.

It was error of law to give the jury the second instruction asked by appellees, and not to give appellant a new trial in this case for newly discovered evidence.

It was error of law to affirm the judgment below, thus giving appellees commissions in the case. *Power* v. *Kane*, 5 Wis. 265; *Pierce* v. *Powell*, 57 Ill. 325; *Coleman's Exr.* v. *Meade*, 5 Bush, 353; *Finnerty* v. *Fritz*, 5 Col. 179; *Kerfoot* v. *Steele*, 113 Ill. 615; *Gilbert* v. *Baxter*, 71 Iowa, 327; *Barnard* v. *Monnot*, 34 Barb. 90; Wharton on Agency, sec. 328; Sugden on Vendors, 68.

Messrs. ABBOTT, OLIVER & SHOWALTER, for the appellees:

The entries in appellees' books were admissible as a part of the *res gestæ*. *Reviere* v. *Powell*, 61 Ga. 30; *Railway Co.* v. *Ingersoll*, 65 Ill. 404; *Stark* v. *Corey*, 45 id. 434; *Collenridge* v. *Farquharson*, 1 Stark. 260; *Milne* v. *Leisler*, 7 H. & N. 786; *North Bank* v. *Abbott*, 13 Pick. 465; 1 Wharton on Evidence, secs. 258, 267; 2 id. sec. 1102.

The written contract was not improper to prove that appellees had bound DeZeng by a writing.

When the broker finds a purchaser, he is entitled to his compensation, even though the principal refuses to complete the sale. *McGavock* v. *Woodlief*, 20 How. 221; *Doty* v. *Miller*, 43 Barb. 529; *Bailey* v. *Chapman*, 41 Mo. 537; *Garnhart* v. *Rentchler*, 72 Ill. 535.

Mr. CHIEF JUSTICE SHOPE delivered the opinion of the Court:

The plaintiffs, real estate brokers of the city of Chicago, brought this action to recover commissions on a sale of certain real estate of the defendant, made by them in pursuance of a

verbal authority and contract with the defendant. The point of contention is, whether the agents were authorized to sell for the price of $90,000.

It appears from the evidence that the defendant authorized the plaintiffs, verbally, to sell the property for $100,000, but if they could do no better, to take $95,000. This was in December, 1884, and at that time, and in the presence of the defendant, one of the plaintiffs made a memorandum of the terms of the sale in a book kept by plaintiffs. The entry thus made was: "Nos. 190 and 192 5th ave.; five-story and basement brick; rents $7420 to June 1, 1885; price $100,000." In parenthesis, the plaintiffs entered their private mark for $95,000, which was then understood to be the lowest selling price. Plaintiffs further contend, that in October or November, 1885, the defendant, at their office, directed Snow to sell the property for $90,000, and that thereupon, as the result of such order, the plaintiff Snow, during the conversation, and in the presence and sight of Monroe, opened their sales record book, and wrote therein the date, "October 31, 1885," together with certain cipher marks, indicating to himself and partner the new selling price of $90,000. On the trial, the court admitted in evidence this last entry on the plaintiffs' books, over the objection of the defendant, and this is assigned for error.

The entry, having been made at the time when the direction was given by the defendant, and as part of the interview, and in the presence and sight of the defendant, was a part of the transaction,—in other words, it was part of the *res gestæ*, and as such was admissible as original evidence in corroboration of the testimony of plaintiffs, that at the date mentioned defendant directed the plaintiffs to sell for $90,000. When a transaction is disputed, anything said, done or written in the presence of the parties, as the immediate, unpremeditated and spontaneous result of such transaction, is admissible in proof of the fact that the transaction occurred, or of its true sig-

nificance. (1 Wharton on Evidence, secs. 258-267; 2 id. sec. 1002.) In *Reviere* v. *Powell,* 61 Ga. 30, the suit was on a check for $225, claimed to have been deposited by plaintiff with defendant. The question of fact was, whether or not the money called for by the check had been paid in a previous settlement between the parties. Witnesses differed in their recollection of the fact. Powell offered in evidence a certain book of Powell & M., which showed an entry of the $225, and its payment in settlement. The court say: "The entry was made at the time of the transaction, and in the presence of the parties, the plaintiff included. It was therefore a part of the *res gestæ.* Any such memorial, made at the time and in the presence of the parties, upon anything,—wood, stone or paper,—is evidence, and admissible, especially in a case where human recollection differs, in order to strengthen the one side or the other. It is immaterial who made it, so that it was made at the time and in the presence of the parties at variance."

It makes no difference that the private mark was used in making the entry, or that it was in cipher. In *Northbank* v. *Abbott,* 13 Pick. 465, the question was whether notice of non-payment had been given to the indorser of the note. The bank messenger had absconded. An entry in his book, showing the name of such indorser, followed by a cipher mark, was put in evidence, in connection with testimony of the cashier that he knew the meaning of the cipher, and knew the mark to be that the indorser had been notified. The court, by SHAW, J., held the memorandum to be competent evidence. So, here, the entry was made, in relation to the price agreed upon at which the property should be sold, in the defendant's presence, and included the date of the conversation, and, as shown, was made in respect of the new selling price. If done in the presence of the defendant, he must have known that it related to the price of the property that was the subject of the conversation. He had just directed the sale at the less price, and there was

no other reason for making the entry upon the book. In the course of plaintiffs' business, the selling price of property, where there was discretion vested in them to take a less price than that asked for the same, the cipher was used to prevent the employes of the office from knowing at what the property might be purchased.

On the trial, the defendant introduced in evidence a postal card, addressed to the defendant, on the reverse side of which was written and printed: "Some time having elapsed since we were advised as to the price and terms of the property hereinafter mentioned, you will kindly insert below any change you desire to make, and return this to us,"—which was signed by plaintiffs. It bears date February, 1886, and states the price of the property at $100,000. The defendant testified that Snow wrote and gave him this card at the interview of February 13, 1886. It was shown, we think, satisfactorily, that it was in fact written by a clerk, under general instructions to write to correspondents after the 22d day of February, 1886. On this card was the letter B and the figures 112, which the proof shows was a reference to book B, page 112, where the private mark indicating $90,000 as the selling price is found. This card, unexplained, tended to contradict the testimony of the plaintiffs that on February 13, 1886, the selling price was changed to $90,000, and tended to corroborate the defendant in that regard. To explain this the plaintiffs were properly allowed to prove, by their clerk, that he wrote the card, and that he took his figures from the book, and that he did not know the meaning of the private marks therein, indicating the selling price. And we think, that in further explanation of this apparent contradiction, the entry in the book at the page referred to in the card was properly admissible in evidence, in connection with the testimony of Snow as to the meaning of the private marks there found.

It is next urged that the trial court improperly admitted in evidence the written contract of the sale of the property to

De Zeng. The contract was signed, "Stephen Monroe, by Snow & Dickinson, his authorized agent," and by Richard De Zeng, successor in trust, etc. The objection is, that the plaintiffs had no written authority to make the sale. The objection is without force. A person may employ a broker or agent to negotiate a sale of real estate without giving him written authority so to do. As between the vendor and vendee the authority of the agent of the vendor must be in writing, but the rule goes no farther. No question is raised of De Zeng's readiness and willingness to consummate his purchase. The defendant's repudiation of his agent's contract of sale will not deprive such agent of compensation for his services. The written contract was properly admitted in evidence, as tending to show that plaintiffs had made a valid sale binding on the purchaser, and enforcible by the vendor.

On the trial, the court instructed the jury, on behalf of the plaintiffs, as follows:

1. "If the jury believe, from the evidence, that the plaintiffs were engaged in business as real estate agents or brokers, in Chicago, that defendant requested or authorized them to sell or find a purchaser for the property in question at the price of $90,000 cash, and that said authority was not limited and was not revoked, and that, pursuant to such request, they did find such a purchaser willing and able to buy said property on said terms, and that defendant, on being notified that such purchaser had been found, and was ready to close the bargain on said terms, refused to carry out the trade, then plaintiffs have earned their commission, and are entitled to recover.

2. "You are further instructed, that it is admitted by the defendant in this case that the customary and usual commissions on sales of the character of the one here in question is two and one-half per cent. And you are instructed, that if, under the evidence and the instructions of the court, you find for the plaintiffs, then your verdict should be for two and one-half per cent on $90,000."

The giving of each of these instructions is assigned for error. The objection to the first instruction is, that it authorizes the plaintiff to recover, without showing that an enforcible sale of the property had been made, or that the contract of sale was completed by a conveyance. Appellant contends, that inasmuch as he refused to ratify the contract of sale, and the purchaser could not have it specifically performed for want of written authority to the plaintiffs to make the sale, he is not bound to pay the plaintiffs anything for their services. We can not lend our sanction to this view of the law. A real estate broker employed to make sale of land, who finds a purchaser at the price fixed by the owner, who is ready, able and willing to take a conveyance and pay the purchase price, has earned the compensation agreed to be paid him; or if the compensation is not fixed by the parties, he will be entitled to recover the usual and customary reasonable compensation for the service performed. Thus, in *McGavoch* v. *Woodlief*, 28 How. 221, the court said: "The broker must complete the sale,—that is, he must find the purchaser in a situation ready and willing to complete the purchase on the terms agreed on,—before he is entitled to his commissions. Then he will be entitled to them, though the vendor refuse to go on and perfect the sale." In *Doty* v. *Miller*, 43 Barb. 529, it is said: "The cases are to the effect that a broker or agent who undertakes to sell property for another for a certain commission, if he finds a purchaser willing to purchase at the price, has earned and can recover his commissions, though the sale never was completed, if the failure to complete the sale was in consequence of a defect of title, and without any fault of the broker or agent." And so, also, in *Bailey* v. *Chapman*, 41 Mo. 537, it is said: "A broker employed to make a sale, under an agreement for a commission, is entitled to pay when he makes the sale according to instructions and in good faith, and the principal can not relieve himself from liability by refusal to consummate the sale, or by a voluntary act of his own disabling him from per-

formance." We are entirely content with the views expressed in the foregoing citations of authority, and are of opinion that there was no error in giving said instruction.

There was no error in giving the second instruction quoted. No testimony was taken of the value of plaintiffs' services, and there was no conflict upon that point. The parties had stipulated what the commissions should be, in case of a recovery by plaintiffs. That stipulation, as found in the record, is: "It is admitted by the parties, that, in the absence of an agreement, the rate of commissions allowed upon sales of real estate of this size is two and one-half per cent." The reasonable charge for commissions was not, therefore, a disputed or controverted fact in the case, and the court committed no error in directing the jury to compute plaintiffs' damages in accordance with such stipulation, if they found the issues for the plaintiffs.

The court properly refused a new trial on the ground of newly discovered evidence. The evidence claimed to be newly discovered was cumulative, merely, and the rule is, that a new trial will not be granted to let in other testimony of this character, or for the purpose of impeaching the testimony of a witness who has sworn in the case, unless it clearly appears that the cumulative testimony will be clear and decisive as to the rights of the parties, upon another trial. This testimony is not of that character. We are not permitted to investigate the facts to determine whether the findings were justified.

We are of opinion that no reversible error has intervened, and the judgment of the Appellate Court will therefore be affirmed.

*Judgment affirmed.*