## JEFFERSON J. GREENE

### v.

## FRENCH HOLLINGSHEAD.

*Agency—Sale of Real Estate—Commissions—Recovery of.*

1. When a real estate agent, under a contract to pay commissions upon finding a purchaser, produces a person who is able, and in binding form offers to purchase lands in his hands for sale, upon terms required, he has found a purchaser and earned his commissions.

2. If in such case the terms include credit to the purchaser, it is to be given by the vendor at his own risk, and the failure of the purchaser to pay or perform accordingly will not of itself affect the broker's claim.

3. In such case, the acceptance of an offer by the seller will estop him from alleging anything against a claim for commissions, except fraud on the part of the broker in inducing the acceptance, or wrong done by him causing failure of the purchaser to perform, and this he must prove. His refusal to accept, for any reason which would be sufficient if true, would impose upon the broker the burden of disproving it.

4. In the absence of other arrangement, where a given contract is signed by a buyer and seller, the same containing stipulations by each in favor of the other of equal value, or nearly so, the agent who brought them together is the proper custodian thereof; the delivery to him by each after signing, amounts to a delivery to the other, and the final delivery by the seller to him completes its execution as a binding agreement.

5. In an action brought by a real estate broker to recover commissions alleged to have been earned by him, this court declines, in view of the evidence, to interfere with the judgment for the plaintiff.

[Opinion filed September 1, 1891.]

APPEAL from the Circuit Court of Ford County; the Hon. A. SAMPLE, Judge, presiding.

Messrs. HOPKINS & HAMMOND and J. H. LOTT, for appellant.

Messrs. COOK & MOFFETT, for appellee.

PLEASANTS, J. This was an action of assumpsit brought by appellee for commissions, as broker, on sale of a section of appellant's land in Vermillion County. Judgment below on verdict for $838.40.

He claimed that he was employed by appellant to find a purchaser at $28 per acre, net, part in cash and part on time, and was to have for his services all he could get in excess of that sum. He got an offer from John N. Boyer of $35 per acre, including a quarter section of land in Kansas, estimated at $3,000, which he reported. Appellant objected to the Kansas land, but upon appellee's agreeing to receive it on account of his commissions, and to be conveyed to him by appellant by quit-claim only, told him to go ahead and make the sale. On June 20, 1888, he obtained Boyer's signature and seal to a contract, reciting that he purchased of appellant the section described for $22,400, to be paid as follows: $2,000 in cash on July 5, 1888, and the Kansas land described for $3,600, on March 1, 1889, and $13,800 on or before March 1, 1899; the $3,600 to be secured by mortgage on the whole section, and $6,900 on the north half, $3,450 on the southwest quarter, and $3,450 on the southeast quarter. On the 21st or 22d of June he took it to appellant, who after some objection to the proposed security also signed and sealed it, without change, and delivered it to appellee, who showed it to Boyer. The understanding then was that the parties would meet at Bloomington on the 5th of July and carry out the agreement; but they did not so meet, nor was the sale ever consummated. On June 23d Boyer wrote to appellant, "Sorry to say that circumstances have come by which I am unable to take your land. Notified Mr. Hollingshead. He

Greene v. Hollingshead.

said it would be all right." Appellee denied that he so said and was corroborated by the only other party who was present on the occasion referred to; and it appears that he wrote to appellant, advising him to come to Bloomington on July 5th with his deed, and tender performance on his part. There was no evidence tending to show that Boyer was unable to pay for the land according to the terms of the agreement, or that appellant ever made any inquiry or had any doubt as to his ability. He, in his testimony, and his counsel in argument, attribute the abandonment of the deal wholly to another cause, namely, that Boyer refused to give the security as required by the alleged conditions, to be hereafter noticed. Appellee received nothing for his services.

On behalf of appellant it is claimed, as a matter of law, that if the contract was abandoned at the instance of Boyer, though with the consent of appellant, and without regard to the question of Boyer's ability to perform it, appellee acquired no right to commissions; that an agreement for commissions upon finding a purchaser is not performed on the broker's part, by his getting an enforceable contract to purchase, on the terms required, of one who is able to perform it, unless he continues to be willing also, and actually does perform it, or is prevented by the fault of the vendor; and that as to all of these conditions the burden of proof is upon the broker.

We think this proposition is opposed to reason and to the weight of authority; according to which, when he produces a party who is able and in binding form offers to purchase upon these terms, he has found a " purchaser " within the meaning of the agreement. It is not to be construed as requiring him to do what he has no authority to do, and he has none to make a sale or a contract for a sale, but only to present a fit person, to whom the owner, if he will, can make it, and having thus done all he was empowered, and therefore all he agreed to do, he has earned the commissions, whether the owner does, or without the broker's fault, does not accept the offer or consummate the proposed sale. If the terms include any credit to the purchaser, it is to be given by the vendor at his own risk, and the failure of the purchaser

to pay or perform accordingly, will not of itself affect the broker's claim. Since the vendor is not bound to accept the offer without a reasonable opportunity to inquire and satisfy himself in relation to it, his acceptance should estop him from alleging anything against this claim except fraud on the part of the broker in inducing the acceptance, or wrong done by him causing failure of the purchaser to perform; and this he must prove. His refusal to accept, for any reason which would be sufficient, if true, would impose upon the broker the burden of disproving it. In support of these views and against the case of Richardson v. Jackson, 31 Md. 250, we refer among others to Love v. Miller, 53 Ind. 294; Kock v. Emerling, 22 How. (U. S.) 691; Glentworth v. Luther, 21 Barb. 145; Sibbald v. Bethlehem Iron Co., 83 N. Y. 378; Reed's Exec'rs v. Reed, 82 Pa. St. 420; Pearson v. Mason, 120 Mass. 53; Leete v. Norton, 43 Conn. 219; Cassady v. Seeley, 69 Iowa, 509; Little v. Rees, 34 Minn. 277; Potwin v. Curran, 13 Neb. 302.

The cases of Rees v. Spruance, 45 Ill. 308, and Garnhart v. Rentchler, 72 Ill. 535, are not deemed in point upon this question. In the first the broker's claim was disallowed, because he was never employed by the defendant as broker or otherwise, and the purchaser never offered to pay as much as the net price stated; and in the other the machines were to be sold, delivered and set up by the claimant and his commissions deducted and retained by him from the proceeds actually received. On the other hand, the rule, as we understand and have above stated it, is expressly declared in Pratt v. Hotchkiss, 10 Ill. App. 603, and McConaughy v. Mahannah, 28 Ill. App. 169; and seems to be recognized in Kerfoot v. Steele, 113 Ill. 610; see also Carter v. Webster, 79 Ill. 435.

But it is further claimed that appellant did not employ appellee to find a purchaser or do anything toward a sale of the land, but simply consented that he might have whatever he could get for it in excess of the net price stated; that the pretended Boyer contract was never executed by delivery; that appellant expressly made it a condition of delivery that Boyer should agree to secure all the deferred payments by

one mortgage upon the entire section, and Boyer refused so to do ; and that the proposed sale was abandoned with the full consent of appellee and without fault of appellant. These claims were all contested. They involved no question of law, except as hereinafter noticed, and in relation to them the evidence was conflicting.

The parties do not pretend that they do or can state the precise language by which their relations were fixed. But appellee was a real estate broker. He had lived near the land and was well acquainted with it. Supposing or understanding that appellant desired to dispose of it, he solicited authority to negotiate for its sale. In reply to his inquiry as to terms, appellant stated the price that was to be net to him, and that in case of sale made, appellee must get enough more to pay "commission;" and he agreed to convey to appellee on account of commissions, the Kansas land offered in part payment of the price, from which it might well be understood that he was also to pay the balance in cash. We think this was substantially more than appeared in Rees v. Spruance, *supra*, and strongly tended to show an employment of appellee to find a purchaser, in the usual manner.

The Boyer contract was signed by both parties and contained stipulations by each in favor of the other, presumably of nearly equal value. Neither, therefore, had more right to its possession than the other. Appellee had an interest in it as a link in the chain of evidence of his right to commissions, and of their amount. In obtaining the signatures he was acting for both and by authority of each. In the absence of other arrangement he was, therefore, its proper custodian. The delivery to him by each, after signing, was in legal effect a delivery to the other; and the final delivery by appellant to him, completed its execution as a binding agreement.

From an instruction given in relation to the alleged condition of delivery, recognizing that defense and the evidence introduced to prove it as legitimate, we must infer that the jury found the fact to be against that claim of appellant, and think that finding should be conclusive; but we are not to be understood as holding that even against appellee, who, though

not a party, had a substantial interest in the contract, parol evidence of a condition of its delivery, inconsistent with its express provisions as signed and delivered by him to appellee, was, in itself, properly receivable. That question was not made in the argument, and therefore, as well as because of the finding, we express no opinion upon it.

From the evidence admitted we are inclined to believe that though appellant desired security by one mortgage upon all the lands, and that this desire should be made known to Boyer, he did not insist on any change in the written agreement nor impose any condition to its delivery as written; that Boyer was quite willing to give up the trade, for the reasons, as stated by appellee, that he could not get the money for the cash payment in the way he had expected, and on reflection had come to dread responsibility for so large a debt as the balance; that from what appellee told him of appellant's desire, he presumed that if he refused to comply, appellee might also be willing to rescind, and asked of appellee to be let off, or at least to be allowed further time for the cash payment; and that appellee made no objection on his own account, but disclaimed authority, referred him to appellant, and advised him to prepare and have his money ready by July 5th, according to the understanding.

Boyer is the only witness who testified to the effect that appellee consented, so far as he was concerned, to the rescission of the contract. Appellee and Clark deny it. Appellant did not so understand, but wrote to Boyer in reply to his postal of June 23d, that his contract was outstanding and he would have trouble with appellee. The circumstances and probabilities are against him. Appellee advised appellant by letter, that in the opinion of counsel the contract was enforceable, and urged him to come with his deed at the time appointed. His interest, fully acquired, was too large to be relinquished without consideration, upon the first suggestion of Boyer, and solely for his accommodation.

It is said that appellant told appellee before he signed it that he would not be bound to resort to legal proceedings to enforce the contract. If he did, we fail to see how that could

Greene v. Hollingshead.

affect appellee's right to commissions.   He would not have been so bound without that statement.   It did not deprive him of the right.   Whether he should exercise it in case Boyer wrongfully refused to perform the agreement on his part, was wholly his own concern, a question to be determined by and for himself alone.   His determination of it could not be made until after appellee's agency was ended and his rights fixed.

A later effort of appellee to find another purchaser of the same land with about 400 acres added, is also urged as proof that he had consented to the abandonment of the deal with Boyer.   That fact certainly shows he then understood that the Boyer deal was off, but that it has any tendency to prove that he was for or against its abandonment, or that his consent was given or asked, is not apparent.   If it had, however, the alleged consent was denied, the jury was instructed, as asked, with reference to the legal effect of the fact if proved, and they found for the plaintiff.   Some of the evidence in support of that finding has been adverted to.   We think that upon this, as upon all the other disputed questions of fact, it was sufficient.   Just how they arrived at the amount of the damages assessed, we do not see; but it is clear that if a cause of action was shown, appellant can not justly complain of the damages awarded.

*Judgment affirmed.*