## Charles J. Off v. J. B. Inderrieden Company.

1. SETTLEMENTS—*Effect of Accepting Remittances by Letter.*—A company had in its employ an agent engaged in selling goods upon commission, between whom and the company a difference of opinion existed as to the amount of commissions due for sales during a past stated period.    The company made out a statement of the account, as it claimed it to be, and inclosed it in a letter with a remittance of the amount due the agent as shown by the statement, stating it to be in full for commissions due the agent and which he retained.    *It was held,* that his retention of the remittance constituted an acceptance of it, and that he could not assert any further demand against the company for commissions during the period covered by the statement.

2. CONSTRUCTION OF CONTRACTS—*Determining the Intention of the Parties.*—In determining the intention of the parties to a contract, the manner in which they have previously acted under like contracts, is evidence worthy of consideration.

3. SAME—*Custom and General Usage.*—In construing a contract for the sale of canned goods on commission, evidence tending to show a general custom prevailing in the business of selling such goods for future delivery, is competent for the purpose of determining the rights and obligations of the parties in respect to matters about which the contract is silent.

4. SAME—*Usage, When Admitted.*—Usage is admitted in cases where the construction of a contract is involved, as a matter of necessity, in order to inform the court of the meaning of the parties.

5. CUSTOM AND USAGE—*Particular Instances, When Competent.*—Proof of particular instances is not competent to show the existence of a custom, but may be competent as tending to show a party's knowledge of the custom.

6. AGENTS—*When Not Entitled to Commissions—Canceled Orders.*—An agent selling goods on commission will not be entitled to his commission upon orders taken by him, but canceled at his request.

7. SAME—*Assignment of Orders.*—An agent who has taken an order for the sale and delivery of goods can not afterward take an assignment of the order from the purchaser to himself, and thus become a purchaser from his principal, nor can he consent to an assignment of the order to a third person so as to bind his principal.

8. SAME—*No Contract or Custom Limiting the Commissions.*—Where there is no contract or custom limiting the commissions of a broker, to transactions actually completed between the seller and the purchaser by delivery of the thing sold, if the broker procures a purchaser whom the seller accepts, and a binding contract is entered into between them, the commission is earned, though the contract be not afterward performed, if the non-performance is without the broker's fault.

9. SAME—*Buyer Able and Willing—Signatures—Burden of Proof.*— In a suit by broker against seller for commissions on a sale, if the seller entered into a written contract with the buyer, the broker need not prove the buyer was able to pay, or that the contract bears his genuine signature. The burden on that subject is on the seller if he denies the genuineness of the signature or ability of the buyer.

**Assumpsit,** for commissions. Appeal from the Circuit Court of Peoria County; the Hon. THOMAS M. SHAW, Judge, presiding. Heard in this court at the May term, 1897. Reversed and remanded. Opinion filed December 17, 1897.

ARTHUR KEITHLEY, attorney for appellant.

Where, from the nature of the covenant, it is apparent the parties contracted on the basis of the continued existence of a given person or thing, a condition is implied that if the performance became impossible from the perishing of the person or thing, that shall excuse such performance. Walker v. Tucker, 70 Ill. 543; Rice & Co. v. Weber, 48 Ill. App. 573; Taylor v. Caldwell, 3 Best and S. 826; Rugg v. Minett, 11 East, 210; Lord v. Wheeler, 1 Gray, 282; Thompson v. Gould, 20 Pick. 134; The Tornado, 108 U. S. 342; Laning v. Rintles, 2 S. E. Rep. (N. Car.) 252; Dexter v. Norton, 47 N. Y. 62; Shear v. Wright, 60 Mich. 159; Spalding v. Rosa, 71 N. Y. 40; Caden v. Farwell, 98 Mass. 137; Stewart v. Loring, 5 Allen, 306; Wells v. Calnan, 107 Mass. 514; Gould v. Murch, 70 Me. 288; Wolf v. Howes, 24 Barb. 176; 2d Benj. on Sales, Sec. 861–865, 6th Am. Ed.; 2 Parsons on Contracts, 8th Ed., note 1, on page 787, bottom

paging; 3 Am. & Eng. Ency. of Law, 901; 3 Addison on Contracts, 8th Ed. 800; Chitty on Contracts, 11th Ed., 1076.

BAILEY & SEDGWICK and PECKHAM & BROWN, attorneys for appellee.

A usage must be proven as a fact. It is not merely the general opinion of persons as to their rights and liabilities under certain circumstances. It is a mode of conducting business, a course of dealing, a method of dealing with certain facts, and not a conclusion as to the rules of law pertaining to these facts. 27 Am. & Ency. Law, 736.

The rule from the earliest times to the present is, when a party, by his own contract, creates a duty or charge upon himself, he is bound to make it good, notwithstanding any accident by inevitable necessity, because he might have provided against it by his contract. Bacon v. Cobb, 45 Ill. 47; Schwartz v. Saunders, 46 Ill. 21; Leopold v. Salkey, 89 Ill. 420; Rawson v. Clark, 70 Ill. 656; Steele v. Buck, 61 Ill. 344.

MR. JUSTICE DIBELL DELIVERED THE OPINION OF THE COURT.

Appellee is a broker and commission merchant doing business in Chicago. Appellant is a wholesale grocer doing business at Peoria under the name of Chas. J. Off & Co. In 1893, appellant also went into the business of canning tomatoes and corn at Warrensburg, Illinois, under the name, Warrensburg Canning Company. Appellee sold canned goods for him in the years 1893 and 1894. The business was conducted in this manner : Appellee would procure orders from intending purchasers on a form hereinafter set out, and send them to appellant, and he would sign acceptances at the foot of the orders. Orders for large quantities of canned goods were taken by appellee in 1894 and accepted by appellant. The season of 1894 was bad, and appellant's tomato crop was largely a failure, and he was unable to fill the most of the orders from the crop grown on his own land. Appellee brought this suit against appellant to recover commissions upon orders so taken for 1894 and accepted by appellant. At the trial it was conceded plaintiff could not recover commissions upon the

orders of A. S. Musselman & Co. and A. W. Pierce & Co. Plaintiff had verdict and judgment for $1,397, being the full amount of commissions claimed by it upon all orders taken and accepted for 1894, except the two above named, thus giving plaintiff commissions upon all orders which defendant was unable to fill by reason of the failure of his crop. Defendant conceded his liability for all orders he filled, but denied his liability for commissions upon orders which he was unable to fill, and prosecutes this appeal from said judgment.

The first question is, what was the contract between the parties, either expressed, or to be implied from the conduct and dealings of the parties. Binder, an agent of the plaintiff, saw defendant in February, or the spring of 1893. Defendant told Binder he intended to establish a canning factory on his farm. Binder asked leave to sell his goods. Defendant answered he had made an arrangement with another party to sell in Peoria. Some understanding was reached that Binder's principal could sell appellant's goods outside of Peoria at a commission of two and one-half per cent. Binder claims the commission was to be two and a half per cent on sales, but it can not be said from his evidence that any conversation took place between himself and defendant in which that was expressly stated. He says defendant understood it perfectly well, but he would not state any conversation of defendant to that effect though pressed to do so. The assistant general manager of plaintiff testified that shortly before the trial defendant admitted to him plaintiff's commissions were to be two and one-half per cent on the sales, but on cross-examination he acknowledged that in said conversation defendant continually insisted that he owed no commissions on orders he did not fill. Defendant testified that he never had any conversation with Binder in which he agreed to pay commissions on orders which he did not fill. Our conclusion from the evidence is that there was no discussion or determination between the parties at that time as to whether plaintiff's commissions should be computed upon all orders accepted, or only upon orders for goods actually delivered.

The dealings of 1893 followed.   Plaintiff took for defendant, and defendant accepted, many orders for that year which he found himself unable to fill.   He remitted plaintiff's commissions at two and one-half per cent on all orders which he filled, and nothing on orders which he did not fill. Defendant's remittance for 1893 was made June 22, 1894, after most of the orders for 1894 had been taken and accepted, and after plaintiff had sent defendant statements charging him commissions on all orders accepted in 1893, whether filled or not.   The language of the letter as to the remittance was, " We herewith hand you exchange covering commissions for last year's business.   In justice to you we ought to have added the interest, and would have done so, but the cannery account would not stand many luxuries of that kind."   We think the language used shows defendant intended this as a remittance in full for commissions due plaintiff for the business of 1893.   The word "covering" was obviously used in the sense expressed in the following definitions of "cover" by the Century Cyclopedia and Dictionary, volume 2 : "to be equal to, be of the same extent or amount, be co-extensive with, be equivalent; as, the receipts do not cover the expenses."   "To counterbalance; compensate for; as, to cover one's loss."   Plaintiff's retention of the remittance constituted an acceptance of it for the purpose for which it was remitted, namely, as "covering commissions for last year's business."   It could not retain the remittance and assert any further demand against defendant for commissions for the business of 1893. Ostrander v. Scott, 161 Ill. 339.   Defendant acknowledged receipt of the remittance, adding, " which we have placed to your credit on account of commissions for last season." They never had any further correspondence or conversation concerning commissions for 1893, so far as appears.   That plaintiff did accept the remittance as payment in full for 1893 is further made evident from the testimony of Inderrieden that plaintiff settled with defendant for 1893 on the orders he actually filled, and from the fact that in bringing this suit plaintiff did not declare for, or claim anything for commissions earned in 1893 remaining unpaid.   If it had a

valid claim for unpaid commissions for 1893 it would natu-
rally have included such claim in this action. The fact
then is that the business of 1893 was settled without serious
difference on the basis of commissions only on orders actu-
ally filled by defendant. In determining the intention of
the parties to a contract, the manner in which they have
acted under other like contracts, is evidence worthy of con-
sideration. Jamieson v. Wallace, 167 Ill. 388.

No new, other or different arrangement was made for
the business of 1894. Under date of February 10, 1894,
plaintiff wrote defendant, " Please advise us if we may offer
your tomatoes and corn on this market, and at what prices.
Also if we shall give our men in the country prices at
which to sell both these items." An affirmative answer was
returned. There was no further correspondence at that
time about terms, and it is evident the business for 1894
was taken on the same basis as the business of 1893. Late
in the season, after defendant's crops had failed and many
cancellations of orders had been effected, there was corre-
spondence between the parties in which plaintiff asserted
its right to commissions on all orders it had taken, and
defendant declared his liability was limited to commissions
on the orders he had filled; but these claims made after the
business had been substantially completed, and in which
each asserted a self-serving view of the contract, do not aid
in determining what the original agreement or understand-
ing was. In a letter from defendant to plaintiff under date
of August 30, 1894, after noting the countermand of Mc-
Donald, Watt & Co. hereinafter mentioned, and after stat-
ing he believed his tomato crop would be short, defendant
said: " It is possible that others to whom you have sold
tomatoes would like to countermand. If that is so, do not
hesitate to permit them to do so. As far as your commis-
sions are concerned they will be just the same, as it is cer-
tain that we can not deliver in full, and I would rather be
able to deliver in full to whomsoever we ship any at all,
than to cut each one down to correspond with the percent-
age of the amount packed." The last sentence refers to the

provision of the contracts, which were like that of S. E. Grossfeldt following, except that the space after the word "remarks" was left blank in some orders and differently filled in others, according to the wishes of the respective purchasers.

"Bought of Warrensburg Canning Co., Peoria, Illinois. Through J. B. Inderrieden Co., agents.  1 car 3 ℔ Warrenburg tomatoes @ 85 c. per dozen.  500.  F. O. B. cars at Chicago, Illinois.  Terms sixty (60) days acceptance or cash less 1½ per cent if paid within ten days from date of invoice.  Shipments to be made when packed.

In case of a partial failure of the crop, we consent to the cutting down of this order *pro rata* with all orders taken, of twenty per cent, without liability for claim for damages, and to accept a cash payment of fifteen cents per case for the cutting down of the additional twenty per cent.  In case of the destruction of the cannery by the elements, the packer is not liable for damages for non-delivery.

Remarks:

S. E. Grossfeldt.

J. B. Inderrieden Co., Agents.

Per R. H.

The above order is accepted this 23d day of February, 1894.        Warrensburg Canning Co.

Per C. J. Off.

24 & 26 S. Desplaines St.

*Note:* The above contract to be signed by the purchaser and seller in triplicate and returned to the agent as soon as practicable, when copy will be sent to the purchaser signed by the seller."

It is argued said letter of August 30, 1894, is a recognition by defendant of his liability for commissions on all orders taken.  We do not so read it.  On June 22d, only a month and eight days before, he had remitted plaintiff the commissions for 1893, paying only on the orders he had filled, and this had been accepted without a word of protest or objection except so far as implied, if at all, in the reply above stated.  The first express statement of plaint-

iff that it expected commissions on orders not filled (except its statement of account for 1893, before mentioned, which it waived in accepting payment only on orders filled) seems to have been in its letter of October 2d, and defendant promptly repudiated the suggestion in his reply of October 3d. We understand the letter of August 30th to mean, " As your commissions are only on the goods delivered, and as I can not wholly fill the orders, your commissions will be the same whether I ship to each an equal percentage of the quantity I have to deliver as the orders provide, or get part of the orders canceled and fill the others, and I prefer the latter course. " We do not see in the words defendant used any concession that plaintiff was entitled to commissions on orders not filled.

The conversation between defendant and Binder having been silent as to the basis upon which commissions were to be computed, defendant introduced evidence tending to show a general custom prevailing in Illinois, Iowa and elsewhere, in the business of selling canned goods for future delivery, to charge and pay such commissions only on goods actually delivered. Such evidence is competent " to determine the rights and obligations of the parties in respect to matters about which the contract is silent." " Usage is admitted in such cases as a matter of necessity, in order to inform the court of the meaning of the parties." 22 Am. & Eng. Ency. of Law, 810. Such general customs form part of contracts in reference to the subject-matter to which the custom relates, made where the custom prevails. Doane v. Dunham, 79 Ill. 131; Samuels v. Oliver, 130 Ill. 73. We can not concede appellee's position that before defendant could show what, by general usage in the business, was meant by an agreement to pay two and one-half per cent. commissions, he must plead such custom specially. The clear preponderance of the evidence on this subject was with defendant, and as the verdict was not in accordance therewith a new trial should have been awarded. There having been proof introduced tending to show such general usage, defendant sought to show that plaintiff was

governed by this usage in settling with those employed to sell its goods where it had no special contract with them on this subject, paying them commissions not on orders taken, but only on orders actually filled. The court refused to admit this evidence. Proof of these particular instances was not competent to show the existence of the custom, but we think it was competent as tending to show plaintiff's knowledge of the custom, a fact defendant had a right to prove without relying solely on the presumption that plaintiff knew the customs prevailing in its business.

Plaintiff claimed and recovered commissions upon the order of S. E. Grossfeldt hereinbefore set out. Concerning this order under date of October 1st, plaintiff wrote defendant a letter, the body of which is as follows: "On February 20th of this year, we sold to S. E. Grossfeldt, of this city, one car, 500 cases, of future tomatoes. Mr. Grossfeldt is a very good customer of ours. He called this morning and is desirous of canceling his order. The fact of the matter is, that he is rather pressed at present and does not feel that he can take these 500 cases. Of course you have his contract signed for same and can hold him to it if you desire; still, as you wrote to us some time ago that you were anxious for cancellations, we trust that you will write us canceling the order for these people, and by doing so you will oblige." To this defendant replied on October 2d, stating he had canceled the order. Plaintiff acknowledged the cancellation in a letter dated October 3d, in these words: "We have your favor of the 2d inst., stating that you had canceled order for S. E. Grossfeldt, which is satisfactory. We have notified Mr. Grossfeldt to forward us contract, and as soon as we receive same will forward it to you." Plaintiff was not entitled to commission on this order canceled at its special request to oblige its own "very good customer."

McDonald, Watt & Wilt (called in the correspondence McDonald, Watt & Co.) signed an order for 1000 cases of tomatoes, which defendant accepted. Under date of August 21, 1894, plaintiff wrote defendant that said purchasers had asked plaintiff to have these tomatoes taken off their hands,

as they had a chance to buy other goods for less money; that plaintiff had written them agreeing to do so, and would place these 1000 cases with some one else, to which letter plaintiff added in postscript, "Have sold these 1000 c. Instructions later." Defendant replied on August 30th, "Referring to your letter of the 21st, and noting countermand McDonald, Watt & Co., of Fort Wayne, Ind., of 1000 cases of tomatoes, would say we can not rebook them as we will no doubt be short of tomatoes." On August 31st, plaintiff rejoined as follows: "Yours of the 30th inst., to hand. We note you say you can not rebook the 1000 cases of tomatoes, McDonald & Watts' lot. Now this order was not countermanded by these people, but the contract indorsed over to us, and we have sold them. However, if we can get out of the sale we will do so. Think we can." The assignment referred to was in these words: "We hereby transfer above contract to the J. B. Inderrieden Co. McDonald, Watt & Wilt." The order in question was not assignable. Plaintiff released McDonald, Watt & Wilt from the contract. Plaintiff had no authority to consent for defendant that said contract might be assigned to itself or to any one else. Plaintiff could not make itself a purchaser. It was acting as agent for defendant, and could not sell to itself unless defendant consented. If it found another purchaser it did not report his name, take a new order, and give defendant a chance to accept or reject it. Plaintiff should not have been allowed commission on this order.

We think also that in view of the evidence tending to show a general custom to pay commissions only on canned goods delivered, it was error to refuse to permit defendant to show more fully the facts with reference to the failure of his tomato crop in 1894, that he might relieve himself from any possible imputation of willfully and without reason failing to fill the orders.

If there be no contract or custom limiting the commissions of the broker to transactions actually completed between seller and purchaser by delivery of the thing sold,

then we are of opinion the law is that where the broker procures a purchaser whom the seller accepts, and a binding contract is entered into between them, the commission is earned though the contract be not afterward performed, if the non-performance is without the broker's fault. While the broker must find a purchaser who is able to pay the price, yet when the seller accepts a purchaser whom the broker finds and enters into a valid contract with him, he must be presumed to have satisfied himself of the responsibility of such purchaser, so far at least as to thereafter assume the burden of showing his inability, if it exists. Wilson v. Mason, 158 Ill. 304; Monroe v. Snow, 131 Ill. 126; Greene v. Hollingshead, 40 Ill. App. 195. So, too, the signing by the seller of an acceptance of an order purporting to be already signed by a purchaser ought to obviate the necessity of the broker proving the signature of such purchaser, and should cast upon the seller the burden of disproving it if he thinks it is not genuine. The option reserved in this case to scale down the sale did not operate to release the purchaser from any part of his contract. It was an option reserved to the seller alone. Dana v. St. Paul Investment Co., 42 Minn. 194. Where the purchaser is bound the option reserved for the benefit of the seller, even if availed of by the seller, does not release the latter from the payment of the agreed commissions. Willes v. Smith, 77 Wis. 81.

For the reasons above stated the judgment of the court below will be reversed and the cause remanded for a new trial. Reversed and remanded.