# Rumsey & Co. v. Barber & Colman.

1. PAYMENT—*Remittance by Mail and Acceptance.*—Where a debtor sends by mail to his creditor a statement of the account between them and remits the balance which he claims to be due, with a request for a receipt in full, the creditor can not apply it in part payment of the amount which he claims to be due without the consent of the debtor, and if he retains the remittance it will be a satisfaction of the claim.

Assumpsit, for merchandise manufactured, etc. Trial in the Circuit Court of Winnebago County; the Hon. CHARLES E. FULLER, Judge, presiding. Verdict and judgment for defendant. Appeal by plaintiff. Heard in this court at the May term, 1898. Affirmed. Opinion filed September 26, 1898.

## STATEMENT.

This is a suit by Rumsey & Co., limited, a New York corporation, against Barber & Colman, of Rockford, Illinois, to recover $240 for 150 pump shells and 150 plungers, manufactured by Rumsey & Co., and shipped to Barber & Colman pursuant to correspondence between them. A trial was had upon issues joined, and there was a verdict and judgment against plaintiff, from which it appeals.

Barber & Colman were inventors, manufacturers and sellers of " The Barber & Colman check pump," for use in creameries, but hired others to make the various parts of which the pump was composed. On January 5, 1897, they began correspondence with Rumsey & Co., with a view to a contract for the manufacture of the parts for 150 such pumps—100 on one kind of base and fifty on another. Specifications and drawings were sent to Rumsey & Co. The latter made a proposition, and under date of January 21st Barber & Colman accepted it, and Rumsey & Co. made the parts and shipped them to Barber & Colman. On February 22d Barber & Colman wrote Rumsey & Co. the parts had been received but did not comply with the specifications. They pointed out the defects of the various parts in detail, but objected specially to the shells and plungers.

The letter then said: "We are in great haste for these goods as our stock on hand is very low and the spring trade will open shortly. In view of this fact, and in order to make your loss as small as possible, we are willing to accept the goods provided you will ship us from Seneca Falls, not later than March 8th, at least twenty-five pump shells which shall fulfill all the requirements of the drawings and specifications, remedy all the difficulties mentioned above, which we can use on the bases we have here, which will join to the stirrup we have, with the gasket we have, * * * provided also that you ship at the same time at least twenty-five plungers which shall fulfill all the requirements of the drawings and specifications and remedy all the difficulties mentioned above; and provided also that you ship us not later than three weeks thereafter enough shells and plungers of the same description to complete the 150; you to bear all freight charges. If you accept this proposition, notify us by wire and proceed at once with the work. If we do not have your acceptance by Thursday, the 25th, we will feel compelled to place our order elsewhere, and will hold these goods subject to your order upon refunding freight and drayage. We regret these errors have occurred and trust you will be able to correct them." In reply Rumsey & Co. on February 24th wired, "What will it cost you to make changes and use pumps shipped you?" Barber & Colman replied by wire, "Impossible, as stated in letter, to use shells or plungers." Rumsey & Co. then wired on same day, "Will ship twenty-five shells and plungers March 8th, balance within three weeks later." Under said date of February 24th, Rumsey & Co. also wrote Barber & Colman a letter concluding thus: "We understand from your letter you will keep goods sent if we will make and ship to you twenty-five more shells and plungers on or before March 8th, and 125 within three weeks from that time, and on this understanding we will wire you we will make these shipments and will push goods forward." On February 26th Barber & Colman wrote a letter in reply, which, after referring to defects not now

important, closed as follows: "As you know by our letter of the 22d, there are other particulars in which pumps do not fulfill requirements of specifications, and we can not accept goods till these errors are corrected." On February 27th Rumsey & Co. sent by express one shell and one plunger, and wrote saying, "Examine carefully and wire us on receipt whether these are right, as we do not care to make another lot without knowing they are correct." Other letters and telegrams followed, not material to a decision of this controversy.

Rumsey & Co. sent the 150 new shells and plungers, and Barber & Colman used them in setting up the 150 pumps, and did not use any of the first 150 shells and plungers, but before this suit was brought, tendered them to the attorneys of Rumsey & Co., who refused to receive them. Barber & Colman made remittances which covered the contract price for the parts for the 150 pumps, but refused to pay for said first 150 shells and plungers, and this suit is brought to recover therefor. The oral proof showed, without contradiction, that said shells and plungers first shipped were not fit for the purpose intended, and could not be used.

MONAHAN & TICKOR, attorneys for appellant.

MORRISON & MILLER, attorneys for appellees.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

Appellant claims the meaning of the language quoted in the foregoing statement, from the letter of February 22d, is that if Rumsey & Co. would ship 150 more shells and plungers, Barber & Colman would keep and pay for all the parts first shipped for the 150 pumps, including the shells and plungers, and would also pay for the second shipment of 150 shells and plungers. If that was the meaning of the letter, Barber & Colman had no need to complain of what they had received, but would simply have ordered 150 more shells and plungers, made strictly in compliance with the

Rumsey & Co. v. Barber & Colman.

plans and specifications. After stating the defects of the various parts, the letter says, " In order to make your loss as small as possible, we are willing to accept the goods, provided," etc. To what loss of Rumsey & Co. did Barber & Colman refer ? If appellant's interpretation of the letter is correct, Rumsey & Co. was to be paid for all the shells and plungers it sent, whether they could be used or not, and was to lose nothing. We think it clear the letter means, " In order to make your loss as small as possible, we will waive all lesser defects we have pointed out, if you will send us new shells and plungers, corresponding to the plans and specifications, to take the place of those shells and plungers you have sent, which do not comply therewith, and which we will not accept." Before Rumsey & Co. accepted the order it wired Barber & Colman to know what it would cost to make changes and use the pumps already shipped, and was told in reply, " Impossible, as stated in letter, to use shells or plungers." Language could hardly make it plainer, that Barber & Colman would not, and claimed they could not, use the shells and plungers already received. It is not reasonable to suppose Barber & Colman intended to pay for the 150 shells and plungers which they could not use, or that Rumsey & Co. expected them to do so. With full knowledge of the meaning of the letter as explained by the telegram, Rumsey & Co. wired an acceptance of the proposition, and the contract was complete; and it was clearly a contract to supply the place of the 150 shells and plungers first shipped with 150 other shells and plungers, which should comply with the specifications and obviate the objections pointed out, and which Barber & Colman could use. It was not in the power of Rumsey & Co., by then writing a letter which would reach Barber & Colman two days later, to change the contract, import a different meaning into their telegram of acceptance, and make Barker & Colman pay for the shells and plungers they had refused to use. It is not clear such was the meaning Rumsey & Co. intended to convey by their letter of February 24th. Barber & Colman, however, did not let

its ambiguous language pass unnoticed, but in their reply of February 26th, stated that they could not accept the goods till the errors were corrected. The letter Rumsey & Co. wrote on February 27th, implies they were not to be paid for the first lot of shells and plungers, and they wished the samples sent approved that they might not " make another lot without knowing they are correct." We are satisfied the judgment below is based upon a correct interpretation of the correspondence.

It is argued a dissatified party can not repudiate an undesirable part of a contract while retaining that favorable to himself, but must repudiate all, if any; and that Barber & Colman were obliged to accept or repudiate the entire first shipment of the parts for the 150 pumps; and having used a part of said shipment, are bound to pay for the whole. The rule referred to is not applicable to the facts. Barber & Colman, by their letter of February 22d, gave Rumsey & Co. the option to replace the most defective parts with others free from defects, or they would repudiate the entire contract and hold the goods subject to the order of Rumsey & Co. Rumsey & Co. accepted the former alternative and made a contract to replace the defective parts, and did so; and received the contract price.

Under date of June 7, 1897, Barber & Colman wrote Rumsey & Co.: " We shall refuse draft as we do not owe you $200. We enclose statement and $45.42 to balance account, also freight vouchers. Kindly receipt in full." Rumsey & Co. retained the sum so remitted. No consent of Barber & Colman is shown for its application as part payment only. Under the authority of Ostrander v. Scott, 161 Ill. 339, Mexican Amole Soap Company v. Clarke, 72 Ill. App. 655, and Off v. Inderrieden Company, 74 Ill. App. 105, the retention of this remittance under the circumstances stated was a satisfaction of the claim.

We find no reversible error in the rulings of the court upon the evidence and instructions. The judgment will be affirmed.