Alvin Scott, Jr., v. Nancy Means Stuart.

Gen. No. 4,397.

1. REAL ESTATE BROKER—*when, entitled to commission.* A real estate broker who finds a purchaser for the real estate in question, upon the terms offered, who is willing, able and ready to buy and pay for such real estate, has earned and is entitled to his commission.

2. VERDICT—*when, may be directed.* It is only where the evidence does not tend to prove the cause of action, that the trial court is authorized to direct a verdict.

Action of assumpsit. Appeal from the City Court of Aurora; the Hon. JOHN L. HEALY, Judge, presiding. Heard in this court at the April term, 1904. Reversed and remanded. Opinion filed August 24, 1904.

S. N. HOOVER and SEARS & SMITH, for appellant.

CRATTY BROS., JARVIS & LATIMER, for appellee;. RAYMOND & NEWHALL, of counsel.

MR. JUSTICE VICKERS delivered the opinion of the court.

This is an action of assumpsit in the City Court of Aurora to recover commission as a real estate broker. Upon the trial below, the court directed a verdict for the defendant, and the plaintiff appeals. Appellee was the owner of two farms in DuPage County, one 110 acres and the other 150 acres. Appellant is a real estate broker and banker. In the latter part of September, 1901, appellee called on appellant and told him if he would sell the 150-acre farm by October 5 he could have a commission of all he could obtain for it over $10,000; appellant undertook to make the sale, and interested other real estate agents to help find a buyer, among others a Mr. Jones. On October 5, the last day limited for the sale, Mr. Jones brought John Schwikert to appellant's office and after some preliminary talk, Schwikert agreed to buy the farm and pay $75 per acre for it, which was accepted by appellant, and Schwikert paid $20 cash, to bind the contract; no writing of any kind, except a receipt for the $20, passed between the parties. Appellant notified appellee by letter on the 5th of October that he had sold her farm on the terms agreed on, and had money paid on it, and requested her to send description or abstract so it could be surveyed, and the abstract brought down to date. To this letter a reply was received, written by H. W. Stuart, appellee's husband, in which appellant is requested to forward a proper warranty deed together with the purchase money to any bank in Cleveland, Ohio, where

appellee resided, and appellee and her husband would execute deed and get the money.

. The abstract was obtained by appellant and placed in the hands of an attorney of the purchaser for examination, who declined to pass the title and advised the filing of a bill in chancery to clear up the title; many letters passed between the parties relating to the supposed defects in the title and the best way of obviating them. This correspondence continued without any adjustment of the matter until in the spring of 1902, when appellee came to Aurora and had a meeting with all the parties interested, at which it was agreed that appellee would execute a warranty deed, and that a bill would then be filed in her name to clear up the title, the expense to be paid by appellant. At this meeting the matter that had been holding up the deal was settled to the satisfaction of all parties concerned and the parties separated to meet the following day at Mr. Hoover's office and complete the deal.

Appellee testifies that she went to Mr. Hoover's office the next day to make the deed, but claims that she did not make the deed, although she was ready, willing and able to do so; she says she saw Scott and Hoover there, but gives no account of anything that took place. On this point Mrs. Stuart is contradicted by Mr. Hoover, who says he was in his office, expecting Mrs. Stuart to come in to make the deed, but he never saw her, and by Mr. Scott, who swears that he was not in the city on that day, and by Mr. Jones, who swears that Mrs. Stuart took the train that day for Cleveland, Ohio. This agreement made between the appellee and appellant, and assented to by Mr. Schwikert, the purchaser, and by Mr. Klein, who was to loan Schwikert a part of the money, may be regarded as a final settlement of the details of the trade which had been the occasion of so much correspondence and delay.

What occurred at this meeting between the parties or in their presence was material and competent evidence. Matt Jones, the agent through whom appellant had found the purchaser, was present at this meeting and took part in the

conversation and heard what was said by the parties to the suit. He was a witness and the following questions were asked :

"Q. State what, if anything, you did with regard to the sale of the farm ?

Q. Did you as a broker ever negotiate for the sale of that farm ?

Q. You may state how you first learned the Stuart farm was for sale ?

Q. You may state if you ever had any conversation or talk regarding this farm ?

Q. You may state what, if anything, you did towards the sale of that farm on or about the 5th day of October, 1901 ?"

All these questions were met with a general objection by appellee's counsel, and they were all sustained, the court holding that it was not necessary for counsel to assign any reason for the objection.

The witness then stated that he had a talk with appellee at Mr. Hoover's office in March, 1902, about the sale of this farm, and touching this branch of the case the record shows the following :

"Q. What was the occasion of that meeting ?

Q. How did you come to meet in Mr. Hoover's office ?

Q. Was there anything said or done there that day, regarding the sale of this farm, in the presence of the defendant ?"

All these questions were objected to and the objection sustained, but upon what theory of law it is impossible to tell either from the objection or the rulings of the court. The exclusion of this evidence was error. The court also erred in directing a verdict for appellee. We think the evidence tends to show that at the meeting of the parties at Mr. Hoover's office, in the latter part of March, there was a complete ratification on the part of appellee of the sale made by appellant, and a waiver of all antecedent objections, if any existed, and an agreement to adjust the whole matter by appellee making a deed on the following

day to the purchaser, and that the deal failed of consummation through the precipitous and unexplained departure of appellee for Ohio. If the jury should find that appellant had found a purchaser for the farm on the terms offered, who was willing, able and ready to buy and pay for the farm, and appellee being advised of the sale and its terms, accepted the same and agreed to execute a deed on the following day and that she refused to execute the deed without any fault of appellant and the sale was not consummated owing to the default of appellee, it is difficult to see why appellant would not be entitled to recover (Monroe v. Snow et al., 131 Ill. 126), although under the evidence, circumscribed by the rulings of the court to unwarrantable limits, the jury might reasonably have found all the essential elements of a cause of action; this being true, it was error in the court to direct a verdict. The court had no right to take the case from the jury, unless there was no evidence tending to prove a cause of action under the declaration. It is only where the evidence does not tend to prove the cause of action that the trial court is authorized to direct a verdict. Cummings v. C. & N. W. Ry. Co., 189 Ill. 608, and cases there cited.

It is argued that the undertaking on the part of appellant was to *sell the farm*, and not merely to find a purchaser, and that to entitle him to recover it is necessary to show a consummated sale or at least an enforceable contract to sell. This position is untenable. To give the contract such a construction would place it in the power of the vendor to defeat the broker in all such cases by simply refusing to consummate the sale by making a deed. Appellant could not complete this sale unless appellee would execute the deed, which she refused to do. When appellant had found a purchaser ready, able and willing to buy on the terms stated, he had earned his commission. Whether the contract is in writing or only parol makes no difference. Monroe v. Snow, *supra*, and cases there cited; Fox v. Starr, 106 App. 273.

The cases of Wilson v. Mason, 158 Ill. 304, and Lawrence

v. Rhodes, 188 Ill. 101, relied upon by appellee, are distinguishable from the case at bar in this, that in those cases the sale failed because the purchaser refused to go on with the deal, and there being no enforceable contract binding him, the vendor lost, without his fault, the benefit of the sale, and hence was released from the payment of commission. Here, as we have seen, it may be found that the sale failed owing to the default of appellee, and if so, the rule announced in the Wilson and Lawrence cases does not apply.

It is said that the purchaser was not able to buy and pay for this farm; that he did not have enough ready cash. It is true he had but $4,000 cash, $2,500 in personal property, and had arranged with Mr. Klein to loan him the balance. It was a question of fact to be submitted to the jury and determined, under proper instruction, whether Schwikert was able to buy and pay for this land.

There are numerous other rulings of the court on the admission of testimony that are open to criticism, but since the case must be remanded for another trial at which it may be assumed that the rulings will be less restrictive, they will not be pointed out.

For the errors indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*